## 9392

### STATE *EX REL.* WALKER v. SAWYER.

#### (88 S. E. 894.)

1. STATUTES—EVIDENCE—PROOF BY ENROLLMENT.—An enrolled act which has been duly ratified by the two houses of the State legislature, authenticated by the signatures of the presiding officers thereof, approved by the Governor, sealed with the seal of the State, and deposited in its archives, is itself conclusive evidence of its terms, and the Courts cannot go behind such an act and inquire whether each and every word has actually received the assent of the legislature.

2. STATUTES—CONSTRUCTION.—The words used in a statute should be given their plain and ordinary meaning, subject to the prime object of ascertaining and giving effect to the legislative intention, in which the Court is not governed by the apparent meaning of words found in one clause, or part, but by a consideration of the whole act, read in the light of circumstances as they are judicially known to have appeared to the legislature, and the purpose sought to be accomplished.

3. STATUTES—CONSTRUCTION—PARTS OF ACT.—When the legislature has expressed its intention clearly in one part of an act, it will be presumed that it had the same intention in another part, unless a different intention clearly appears.

4. STATUTES—CONSTRUCTION—"PROVIDED THAT."—Section 24 of the act to make appropriations to meet expenses of the State government

for the fiscal year 1916, reading in part: "Section 24. School for the Deaf and the Blind. * * * Item 5 repairs, main building (provided that $17,500 be appropriated in 1917 and $17,500 in 1918) * * * $10,000 * * *"—merely advises the legislatures of 1917 and 1918 of the plan adopted for making the repairs by extending the work over a period of three years, and appropriating each year such part of the total estimated cost as can be judiciously expended during the summer vacation; for, though the words "provided that" are usually used to express a condition, limitation, or exception, their meaning in the statute, must be gathered from the context and a consideration of the whole statute, while the purposes of the act, as expressed in the title and enacting words of the first section, is to make appropriations available for expenses of the government during 1916, and not to postpone expenditure of the appropriation until succeeding legislatures have made others.

5. EVIDENCE—JUDICIAL NOTICE—MATTER OF COMMON KNOWLEDGE.—It is matter of common knowledge that repairs to school buildings can be made most advantageously when the school is not in session, and that they are usually made at such time to avoid interference with school work.

IN THE ORIGINAL JURISDICTION.    April term, 1916.

Petition for mandamus by the State, on the relation of N. F. Walker, as treasurer of the South Carolina School for the Deaf and the Blind, against Carlton W. Sawyer, Comptroller General of South Carolina.   Writ to issue as prayed for.

*Mr. Solicitor Hill,* for petitioner, cites: *As to appropriation of public moneys:* Const. 1895, art. IV, sec. 23.   *Regard to legislative intent:* 99 S. C. 218; 96 S. C. 36; 86 S. C. 419; 87 S. C. 102.   *Evidence:* 39 S. C. 307; 100 S. C. 165; 36 Cyc. 1138; 44 Cent. Digest, Title, Statutes, par. 293.   *Construction:* 86 S. C. 419; 101 S. C. 48.   *Provisos:* 37 S. C. 401; 67 Me. 295, 299; 8 N. E. 518; 20 Ind. 398; 128 U. S. 181; 90 Fed. 636.   *Entire act to be considered:* 68 S. C. 411.

*Mr. Attorney General Peeples,* for respondent, submits: *The intention of the legislature must be gathered from the*

*literal interpretation of the language of the statute, which is plain and unambiguous:* 99 S. C. 218; 56 S. C. 180; 33 S. C. 551. *The general rule is undoubtedly that the appropriate office of a proviso is' to restrain or modify the enacting clause or preceding matter, and not to enlarge the enacting clause:* 37 S. C. 401; 177 U. S. 26; 78 S. C. 56; 181 Ill. 73; 50 L. R. A. 519; 113 Va. 102; 73 S. E. 467, and note in Ann. Cas., 1913e, 658; 258 Ill. 624; 102 N. E. 260; Ann. Cas. 1914b, 385; 33 S. C. 168. *The act cannot be given the same effect with the proviso which it would have borne in its absence:* 191 U. S. 151. *Here the proviso has the effect of the suspending the appropriation of $10,000 from the taxes of 1916, until the further appropriations should be made in 1917 and 1918, out of the funds for those years:* Endlich on Interpretation of Statutes, sec. 185. *Under the decision in 39 S. C. 307, the Court will not look beyond the enrolled act on file in the office of the Secretary of State, bearing the signatures of the President of the Senate, Speaker of the House, and Governor, to ascertain the terms of the act in question:* 143 U. S. 694. See notes in 9 Am. & Eng. Ann. Cas. 582, 586; 20 Am. & Eng. Ann. Cas. 350; 23 L. R. A. 340; 40 L. R. A. (N. S.) 1; 44 L. R. A. (N. S.) 468.

May 24, 1916.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Section 24 of the act to make appropriations to meet the expenses of the State government for the present fiscal year, as enrolled, ratified, and approved, reads:

Section 24. *School for the Deaf and the Blind.*

| Item | 1. Maintenance | $37,000 | 00 |
| Item | 2. Scholarships | 600 | 00 |
| Item | 3. Insurance | 293 | 33 |
| Item | 4. Repairs and improvements | 2,000 | 00 |

| | | |
|---|---|---|
| Item 5. Repairs, main building (provided that $17,500.00 be appropriated in 1917, and $17,500.00 in 1918) .. | 10,000 | 00 |
| Item 6. Shoe shop equipment............. | 500 | 00 |
| Item 7. To purchase linotype machine........ | 1,500 | 00 |
| Total ........................ | $51,893 | 33 |

The respondent refused to issue his warrant for the sum mentioned in item 5, on the ground that the appropriation thereof is conditioned upon the appropriation of $17,500 in 1917, and a like sum in 1918, and, therefore, it will not be available until the condition has been performed.

The petitioner alleges that the words "provided that" were inserted in item 5 without authority of the legislature, and should be rejected, and, for proof thereof, refers to the original bill which accompanies the act, and to the memoranda indorsed thereon by the presiding officers of the two houses, and to the journals of the two houses, from which, he alleges, it appears conclusively that those words were inserted in the enrolled act by mistake, or at least without authority of the legislature.

In *State ex rel. Hoover* v. *Chester,* 39 S. C. 307, 17 S. E. 752, it was held that an enrolled act which has been duly ratified by the two houses, as authenticated by the signatures of the presiding officers thereof, and approved by the Governor and sealed with the seal of the State and deposited in the archives of the State, is itself conclusive evidence of its terms, and the Court cannot go behind such an act and inquire whether each and every word found therein has actually received the assent of the legislature. The principle of that case has been repeatedly reaffirmed by this Court. The recent case of *Regents* v. *Sawyer,* 104 S. C. 59, 88 S. E. 7, is not to the contrary, for, although the Court did refer to the provisions of the origi-

nal bill and the amendments thereto, as they appeared in the journals of the two houses, the decision was based entirely upon the construction of the language used in the act as ratified and approved. We cannot consider the evidence referred to for the purpose of showing that those words were improperly inserted in the act. The words "provided that" are usually used to express a condition, limitation, or exception. Perhaps, no words more apt for that purpose could be chosen. But they are not always so used; and their meaning must be gathered from the context and a consideration of the whole instrument. See "Provided," 6 Words and Phrases 5749.

While it is an elementary rule of construction that words used in a statute should be given their plain and ordinary meaning, this, as all other rules, is subject to the prime object of ascertaining and giving effect to the legislative intention. In doing this, we are not to be governed by the apparent meaning of words found in one clause, sentence, or part of the act, but by a consideration of the whole act, read in the light of the conditions and circumstances as we may judicially know they appeared to the legislature, and the purpose sought to be accomplished.

"The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the legislature has in view. Their meaning is found, not so much in a strictly grammatical or etymological propriety of language, nor even in its popular use, as in the subject or in the occasion on which they are used, and in the object to be attained." Endlich on Interpretation of Statutes, sec. 73.

At section 295, the same author says:

"When the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably

not intended, a construction may be put upon it, which modifies the meaning of the words, and even the structure of the sentence. (a) This is done, sometimes, by giving an unusual meaning to particular words; sometimes by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence, no doubt, of an irresistible conviction, that the legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language, and really give the true intention."

In *Stackhouse* v. *County Board,* 86 S. C. 419, 68 S. E. 561, this Court said:

"However plain the ordinary meaning of the words used in a statute may be, the Courts will reject that meaning, when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the legislature, or would defeat the plain legislative intention; and if possible will construe the statute so as to escape the absurdity and carry the intention into effect."

Therefore, when it appears that to give the words used in item 5 their ordinary meaning, a conflict is created with the intention which is clearly expressed in the title and the first section of the act, and something which appears 3, 4 to have been intended to be done is practically nullified, we naturally hesitate and inquire whether the words may not have been used in some other than their ordinary sense. The legislature must· be supposed to have intended to be consistent with itself; and, therefore, when it has expressed its intention clearly in one part of an act, it will be presumed that it had the same intention in another part, unless a different intention clearly appears. The same rule obtains in construing other writings.

The purpose of the act, as expressed in the title and shown by the enacting words in the first section, was to make appropriations that would be available for expenses of the gov-

ernment during the present year. That purpose is plainly expressed in the title:

"An act to make appropriations to meet the ordinary expenses of the State government *for the fiscal year commencing January 1st, 1916,* and to provide a tax sufficient to defray the same, and for borrowing money."

The first section reads:

"That the following sums of money, if so much be necessary, *be, and the same are hereby, appropriated* out of the State treasury to meet the ordinary expenses of the State government *for the several objects and purposes specified during the fiscal year beginning January 1, 1916,* and a tax of 6½ mills upon all taxable property of the State is hereby levied to defray the same," etc.

The words italicized show the intention to appropriate money to be used during the present fiscal year, and the words "provided that," if given their usual meaning in item 5, create a conflict with that expressed intention. Besides this, the sum appropriated in item 5 appears not only in the total of the appropriations made for the school for the current year, but it appears also in the recapitulation of the appropriations which appears in section 43 and in the grand total of all appropriations made for the current year, all of which is in accord with the intention expressed in the title and in the first section and opposed to the idea that the words "provided that" were used to express a condition.

The suggestion that the legislature of 1916 intended merely to set apart a sum of money out of the taxes levied expressly for the expenses of the government during the present fiscal year, and make it available only on condition that the legislatures of 1917 and 1918 shall appropriate the sums named, is so inconsistent with the subject of the act, as expressed in its title, and is such a departure from the usual, if not invariable, custom of making appropriations, as to warrant the inference that such was not the intention.

The legislature of 1916 knew, of course, that it could not bind the legislatures of 1917 and 1918 to appropriate the amounts suggested for those years, and that either of the succeeding legislatures could appropriate the whole amount needed for the purpose specified. If then the appropriation of 1916 is held to have been made upon the condition alleged, in practical effect, it amounts to nothing. We must presume, however, that the legislature of 1916 intended by its action to accomplish something, and not to do a futile thing. Moreover, if the sum mentioned in item 5 is merely set apart upon condition, the State will be paying interest on that amount, or, at any rate, losing interest on it, until the legislatures of 1917 and 1918 shall perform the condition. It is not reasonable to suppose that the legislature would have adopted such an unbusinesslike policy.

From all these considerations, we conclude that the words "provided that" were not used in their ordinary sense, but merely to advise the succeeding legislatures of the plan or scheme adopted for making the needed repairs to the main building of the school by extending the work over a period of three years, and appropriating each year such part of the total estimated cost of the repairs as could be judiciously expended during the summer vacation of the school.

It is matter of common knowledge that repairs to school buildings can be made most advantageously when the school is not in session, and that they are usually made at such time to avoid interference with school work.

The judgment of this Court is that the writ of mandamus be issued as prayed for.