## SHELLEY v. UNITED STATES.
### No. 7670.

United States Court of Appeals for the
District of Columbia.

June 9, 1941.

Rebecca Shelley, pro se.

Bernard Margolius, of Washington, D. C.
(Edward M. Curran and Arthur B. Cald-
well, both of Washington, D. C., on the
brief), for appellee.

Before MILLER, EDGERTON, and
RUTLEDGE, JJ.

EDGERTON, Justice.

This is an appeal from a decree denying
appellant's petition for naturalization. Ap-
pellant is a native born woman who has
always lived in the United States. In Au-
gust, 1922, she married a German alien.
Section 3 of the Expatriation Act of 1907 [1]
then provided that an American woman who
married a foreigner took his nationality.
Appellant therefore lost her citizenship.[2]
On September 22, 1922, Congress passed the
Cable Act,[3] which enacted[4] that a wo-
man citizen should not cease to be a citizen
by reason of marriage after the passage of
the Act, unless she formally renounced her
citizenship. This Act expressly repealed
Section 3 of the Expatriation Act, but with
the proviso that the repeal was not to restore
citizenship already lost.[5] It permitted an
expatriated wife to regain citizenship by
taking the oath of allegiance and complying
with certain other requirements of the
naturalization laws.[6]

On April 10, 1940, the District Court de-
nied appellant's petition for naturalization
because, although she was willing to take
the oath of allegiance,[7] she interpreted it as

---

[1] 34 Stat. 1228.

[2] Mackenzie v. Hare, 239 U.S. 299, 36
S.Ct. 106, 60 L.Ed. 297, Ann.Cas.1916E,
648. Appellant's contention that wo-
man suffrage overrules the statute and
the Mackenzie case has no merit.

[3] 42 Stat. 1021, 1022, amended, 46
Stat. 854, 8 U.S.C.A. §§ 9. 10, 367 et seq.

[4] Section 3, 8 U.S.C.A. § 9.

[5] 42 Stat. 1022, Sec. 7, 8 U.S.C.A. § 9.

[6] 42 Stat. 1022, Sec. 4, 46 Stat. 854,
U.S.C.A. Tit. 8, § 369.

[7] U.S.C.A. Tit. 8, § 381.

not implying a promise to bear arms. She was unwilling to bear arms because of pacifist and religious convictions. Previous petitions of appellant had been denied for the same reason by other courts, including the Circuit Court of Appeals for the Sixth Circuit.[8]

Thereafter, on July 2, 1940, Congress enacted that a woman who married an alien before September 22, 1922, and afterwards lived continuously in this country, "shall be deemed to be a citizen of the United States to the same extent as though her marriage to said alien had taken place on or after September 22, 1922: Provided, however, That no such woman shall have or claim any rights as a citizen of the United States until she shall have duly taken the oath of allegiance * * *."[9] The government contends that this statute made appellant a citizen at once. If that is true, her appeal is moot. But the government concedes that its construction of the statute "is not in harmony with the legislative intention expressed in the committee report and debates on the bill. It is apparent therefrom that it was the intention of the framers of the Act to defer repatriation until the oath of allegiance was taken." The government asks us to ignore what it concedes to be the actual intent of Congress, on the theory that the statute clearly expresses a different intent. We are not prepared to assert that Congress clearly said the opposite of what it meant. It is possible to interpret the statutory proviso as meaning "Provided that she shall first take the oath of allegiance." The other interpretation, for which the government contends, would involve this paradox, that Congress created a class of so-called "citizens" from whom, although they had committed no offense, it withheld all the rights of citizens. Resort to the usual evidence of congressional intent is proper. That evidence makes it clear that an expatriated wife does not become repatriated until she takes the oath of allegiance.[10] This appeal, therefore, is not moot.

Although Congress has exempted expatriated wives from much of the naturalization procedure, it has prescribed for them the same oath as for other aliens who wish to become naturalized. This oath includes a promise to "support and defend the Constitution and laws of the United States against all enemies, foreign and domestic, and bear true faith and allegiance to the same."[11] Appellant is willing to take this oath but, as set forth above, is unwilling to bear arms. In 1931, in United States v. Macintosh[12] and United States v. Bland,[13] the Supreme Court held that the oath implied a promise to bear arms and that a man or woman who would not make that promise could not be naturalized. Justices Holmes, Brandeis and Stone joined Chief Justice Hughes in dissenting; but in view of the recent flag salute case,[14] we cannot predict that the present Supreme Court will agree with them. Law is "prophecies of what the courts will do in fact."[15] We must therefore follow the Macintosh and Bland cases.

Affirmed.

---

8 Shelley v. Jordan, 106 F.2d 1016.

9 Public No. 704, 76th Cong., 3d Sess., 54 Stat. 715, amending 49 Stat. 1917, U.S.C.A. Tit. 8, § 9a.

10 80 Congressional Record 9971; H. Rep. No. 2106, 74th Cong., 2d Sess.; H. Rep. No. 869, 76th Cong., 1st Sess.

11 53 Stat. 844, U.S.C.A. Tit. 8, § 381.

12 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302. Cf. United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889, in which Justices Holmes, Brandeis and Sanford dissented.

13 283 U.S. 636, 51 S.Ct. 569, 75 L.Ed. 1319.

14 Minersville School District et al. v. Gobitis, 310 U.S. 586, 60 S.Ct. 1010, 84 L.Ed. 1375, 127 A.L.R. 1493. Mr. Justice Stone dissented.

15 Holmes, Collected Legal Papers, 173.