## In re WATSON'S REPATRIATION.

District Court, E. D. Illinois.

Dec. 10, 1941.

John Marshall Dahlberg, Examiner, of Chicago, Ill.

LINDLEY, District Judge.

The applicant, Gladys Thelma Watson, has filed her ·application under Form N-415 for leave to take the oath of allegiance to the United States, become repatriated as provided in Section 335(b) of the Nationality Act of 1940, 54 Stat. 1157, 8 U.S. C.A. § 735(b), and thereby obtain the rights of a citizen of the United States. Two questions are presented, first, is the applicant now a citizen and, second, is it necessary that she take the oath of allegiance or perform any other act in order legally to exercise all the rights of citizenship?

The applicant is a native-born citizen of the United States, married on March 12, 1918 to Peter Watson, a British citizen. She resided for a short time in Canada and then returned to the United States where she and her husband continuously resided until his death in 1938, as the result of an automobile accident. After their return to this country, he became a naturalized citizen. The marital relationship, obviously, was terminated by his death.

■ At the time of the marriage, the Act of March 2, 1907, Chap. 2534, 34 Stat. 1228, was in full force and effect. It provided that "any American woman, who marries a foreigner shall take the nationality of her husband. At the termination of the marital relation she may resume her American citizenship, if abroad, by registering as an American citizen within one year with a consul of the United States, or by returning to reside in the United States, or, if residing in the United States at the termination of the marital relation, by continuing to reside therein." Section 3. By virtue of this statute, therefore, upon her marriage, applicant lost her American citizenship.

This section was repealed by Section 7 of the Act of September 22, 1922, Title 8, Sec. 9, U.S.C.A., commonly termed the Cable Act, which provided that a woman should not cease to be a citizen by reason of such marriage, after the passage of the Act, unless she formally renounced her citizenship and that the repeal should not restore citizenship already lost and permitted an expatriated wife to regain citizenship by taking the oath of allegiance and complying with certain other requirements. Title 8 U.S.C.A. § 369.

On June 25, 1936, 49 Stat.1917, Congress enacted another statute, which was amended on July 2, 1940, Title 8 U.S.C.A. § 9a. Under this act as amended, a woman expatriated by the Act of March 2, 1907, whose marriage with an alien husband had been terminated or who, after the amendment, had not resided outside the United States subsequent to the marriage, was to be deemed a citizen but, in order to exercise the rights of citizenship, she should take the oath of allegiance. That Act is as follows: "To repatriate native-born women who have heretofore lost their citizenship by marriage to an alien, and for other purposes. Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That hereafter a woman, being a native-born citizen, who has or is believed to have lost her United States Citizenship solely by reason of her marriage prior to September 22, 1922, to an alien, and whose marital status with such alien has or shall have terminated, *or who has resided continuously in the United States since the date of such marriage,* [italics added by Act of July 2, 1940] shall be deemed to be a citizen of the United States to the same extent as though her marriage to said alien had taken place on or after September 22, 1922: Provided, however, That no such woman shall have or claim any rights as a citizen of the United States until she shall have duly taken the oath of allegiance as prescribed in section 4 of the Act approved June 29, 1906 (34 Stat. 596; U.S.C., title 8, sec. 381), at any place within or under the jurisdiction of the United States before a court exercising naturalization jurisdiction thereunder or, outside of the jurisdiction of the United States, before a secretary of embassy or legation or a consular officer as prescribed in section 1750 of the Revised Statutes of

the United States (U.S.C. title 22, sec. 131); and such officer before whom such oath of allegiance shall be taken shall make entry thereof in the records of his office or in the naturalization records of the court, as the case may be, and shall deliver to such person taking such oath, upon demand, a certified copy of the proceedings had, including a copy of the oath administered, under the seal of his office or of such court, at a cost not exceeding $1, which shall be evidence of the facts, stated therein before any court of record or judicial tribunal and in any department of the United States [49 Stat. 1917]. Approved, June 25, 1936."

Following this enactment, the Nationality Act of 1940, 8 U.S.C.A. § 501 et seq., became effective on January 13, 1941 and is now in full force and effect. Under that act the last quoted section was repealed, section 504 providing: "The following Acts or parts of Acts are hereby repealed; * * * Act of June 25, 1936, chapter 801 (49 Stat. 1917); * * * And any other Acts or parts of Acts in conflict with the provisions of this Act, except for the purposes of section 346 of this Act. The repeal herein provided shall not terminate nationality heretofore lawfully acquired, nor restore nationality heretofore lost under any law of the United States or any treaty to which the United States may have been a party."

■ From the facts here and under the law quoted, it is apparent that by the act of June 25, 1936, as amended July 2, 1940, the applicant, inasmuch as her marital status with the alien has been terminated, having been married prior to September 22, 1922, is to be deemed a citizen of the United States to the same extent "as though her marriage to said alien had taken place on or after September 22, 1922." This is the express provision of the act and is equivalent to saying that such a woman did not cease to be a citizen by reason of her marriage, unless she formally renounced her citizenship. Consequently, by reason of the act of September 22, 1922, the applicant was endowed with citizenship.

But we are confronted with the proviso of the section, which is that the rights of citizenship shall not be exercised until such applicant shall have duly taken an oath of allegiance and it is suggested that the effect of the proviso is to read into the provisions endowing her with citizenship a condition that her citizenship shall

not be effective until she has taken the oath. Then the Nationality Act, section 317(b) reads as follows: "From and after the effective date of this Act [chapter], a woman, who was a citizen of the United States at birth, and who has or is believed to have lost her United States citizenship solely by reason of her marriage prior to September 22, 1922, to an alien, and whose marital status with such alien has or shall have terminated, if no other nationality was acquired by affirmative act other than such marriage, shall, from and after the taking of the oath of allegiance prescribed by subsection (b) of section 335 [735] of this Act [chapter], be deemed to be a citizen of the United States to the same extent as though her marriage to said alien had taken place on or after September 22, 1922."

■ The original Act of March 2, 1907, came into existence during a period when the common law doctrine of coverture and all its limitations were quite generally recognized in this country. A married woman's legal status had not escaped its burdens and limitations existing under Anglo-Saxon law. Indeed the Act itself provided that citizenship should not be restored until termination of the coverture. When this act was repealed in 1922, the situation had very largely changed. The limitations of coverture at common law had been supplanted by legislation granting to married women practically equal rights including suffrage. They had become at law the equivalents of men. But that repeal was an unfortunate one in that the act made no provision to perpetuate the provision for resumption of citizenship which the act itself provided. As a consequence, women who had married aliens and whose marriage relationship had not been terminated prior to 1922, found it necessary to be naturalized in order to regain citizenship. In a tardy effort to remedy this situation Congress passed the act of June 25, 1936, amended July 2, 1940, and under that act, if one is to accept the ordinary significance of the words used we must believe that women were repatriated pro forma by the statute. The proviso does not purport to do away with the previous grant of citizenship, but provides that before such women shall be entitled to exercise the rights of citizenship they shall take an oath of allegiance. A proviso may not be construed so as to make it repugnant to the body of the provision it limits. 59

166

Corpus Juris 1089; In re Matthews, D.C., 109 F. 603; M. H. Pulaski Co. v. United States, 6 Cust.App. 291; Borroneo v. Mariano, 41 Philippine 322; State v. Sawyer, 104 S.C. 342, 88 S.E. 894. It follows that the effect of the statute is that the applicant is now a citizen but that in order to have tangible evidence of her citizenship she should be permitted to take an oath of allegiance. Confirming this is the language of the act in Section 504 of the Nationality Act of 1940. This repealed the act of June 25, 1936, but it also provided that the repeal should not terminate citizenship therefore lawfully acquired. The effect of such repeal to my mind is to make it unnecessary for an American woman whose marriage was terminated before January, 1941, the effective date of the Nationality Act of 1940, or a woman who had never resided outside the United States with her alien husband, to take the oath of allegiance before being considered a citizen. The vested right of citizenship could not be defeated by the repeal. It is too well known to require citation of authority that vested rights cannot be defeated by legislative repeal.

I conclude, therefore, that the applicant is a citizen of the United States, that it is unnecessary for her to take an oath of allegiance or repatriation but that as tangible evidence of the existence of her rights of citizenship, she should be permitted to take the oath and to receive certification of that fact.

Judgment will enter in accord with this memorandum.