## In re KINLOCH.

## In re McKILLOP.

### Nos. 9175, 9176.

District Court, W. D. Washington, S. D.

Jan. 12, 1944.

No appearance for petitioners.

Carl H. Lee, of Tacoma, Wash., Naturalization Examiner.

LEAVY, District Judge.

These two applications are considered together since they present an identical question, and were heard at the same time.

Both of the applicants are British subjects, residing in the United States, who registered under the provisions of the Selective Training and Service Act of 1940 and the amendments thereto, 50 U.S. C.A.Appendix § 301 et seq. Each filed his questionnaire with his respective draft board, and therein requested to be classified as 1AO, conscientious objector, for non-combat service.

William Robert Kinlock was at all times herein mentioned a member of the Seventh Day Adventist Church, and William McKillop a member of the Plymouth Brethren Church. Their respective draft boards, after consideration of their questionnaires, gave them the classification requested; that is, 1AO, for non-combatant military service. In the early summer of 1943 they were inducted into the Army under the classification given them, and assigned to a medical unit, ultimately arriving at Fort Lewis, Washington, where their applications for citizenship were filed and presented.

The representative of the Immigration Service objected to their naturalization for the reason that they would not unequivocally state that they were willing to bear arms. This objection was considered by the court and overruled, and the applicants ordered admitted as citizens.

It is the contention of the Immigration Service that these applications must be considered in light of the interpretation placed upon the statutory oath of allegiance, the form of which is provided in the Nationality Code of 1940, 8 U.S.C.A. § 735. When interrogated by the examiner, in open court, both applicants testified that if the oath of allegiance implied a willingness to bear arms and serve in combat units of the Army, they could not subscribe to

3 Cf. Chipman Chemical Engineering Co., Inc. v. Reade Mfg. Co., 3 Cir., 98 F.2d 198.

such an oath without mental reservations, in view of their religious affiliations and convictions. When interrogated by the court, they stated that if to "support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic; and bear true faith and allegiance to the same", meant to perform military duty, wear the uniform, take the oath of a soldier, and serve at any place, at any time, and in any noncombatant capacity, then they could freely and without mental reservation subscribe to such oath.

The oath required of a member of the military branch of the Government, which was taken by each of these. applicants, is very comprehensive, and in many respects covers much of the ground covered by the oath of allegiance. It is: "I, —————, do solemnly swear (or affirm) that I will bear true faith and allegiance to the United States of America; that I will serve them honestly and faithfully against all other enemies whomsoever; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to the Rules and Articles of War."

The commanding officer of the unit to which these applicants were attached was present in court, and testified that such unit was composed almost entirely of soldiers who qualified for combat service. He further testified that no distinction whatever was made as between these two applicants and other members of the unit, in the training, qualifying, equipping, responsibilities and duties assigned to them. It was further made clear to the court that these applicants, as members of a medical unit, were required to and did take the basic training provided for such unit, and in all respects were soldiers assigned for duty in a medical unit of the Army in time of war.

The court was further advised that by the terms of the Geneva Conference, officers and men who are a part of, and attached to hospital and medical units are prohibited from bearing arms.

The evidence disclosed that the hazards incident to service in a detachment such as the applicants belonged to are equal to those of the combat units, since their duties require them in time of battle to be at the front lines, under fire, in order that they may expeditiously and effectively care for their companions who are casualties, and that the same high degree of valor and courage demanded of soldiers who are a part of the combat forces and bear arms is required of them in the discharge of their duties as soldiers.

It is contended by the Immigration Service that the interpretation placed upon the oath of allegiance by the Supreme Court in the cases of United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889, United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302, and United States v. Bland, 283 U.S. 636, 51 S.Ct. 569, 75 L.Ed. 1319, definitely disqualifies these applicants from citizenship.

The position of the representative of the Immigration Service must be well taken and sustained unless there be in the instant cases something that distinguishes them from the above-cited cases.

It is interesting to note that the aforementioned opinions are by a divided court; in the Schwimmer case the division being 6 to 3, and in the Macintosh and Bland cases, 5 to 4, and in all of these cases there were reversals of the unanimous decisions of the Circuit Courts from which they came. This fact is mentioned, not as a basis to hold in the instant cases that the law is other than announced by the court of last resort, but rather to show that the question of what implications and inferences are to be drawn from the wording of the oath of allegiance is not free from doubt. Unless the facts in the instant cases are clearly distinguishable from those in the cited cases, or there has been Congressional enactment of legislation permitting this court to grant citizenship to these applicants, their applications would have to be denied. This is particularly true, since Congress, by the Constitution, has the sole power of providing for the naturalization of aliens, and unless a distinction in the facts can be made, taking these applications out of the rule announced by the Supreme Court, or that legislation has been enacted since those decisions that would distinguish these cases from those upon which the Supreme Court has spoken, it would clearly be the duty of this court to grant the motion of the Naturalization Service to dismiss the petitions.

The applications were granted and the applicants admitted to citizenship, based upon the fact that this court finds that by Congressional enactment subsequent to the

decisions in the cited cases, Congress, with full knowledge thereof, provided that these applicants and all aliens similarly situated, are entitled to citizenship by virtue of becoming members of the armed forces of the United States, performing military duty, wearing the uniform, and taking the soldiers' oath.

The enactment of the Selective Training and Service Act of 1940, with the amendments thereto, and the rules and regulations promulgated under said act, required all aliens residing in this country, who fell under certain age groups, to register for military service, and no exemption from such service by reason of alienage is granted. Following the enactment of the Selective Training and Service Act and the amendments, Congress, in March, 1942, enacted what is now entitled sub-chapter VI, dealing with the naturalization of persons serving in the armed forces during the present war, 8 U.S.C.A. §§ 1001 to 1005, inclusive, and therein specifically provided for situations such as here presented.

The Selective Training and Service Act permitted all registrants thereunder to be classified for service as follows:

1. General combatant service

2. Non-combatant service

3. Work of civilian importance in camps

Those who were inducted and classified as 1AO were required to take the oath of a soldier, to live the life of a soldier, to wear the uniform, to assume all the hazards and responsibilities of a soldier, except to bear arms, as well as have the rights and privileges of a soldier, both during the period of service and after honorable discharge.

There can be no question under the facts that these two soldiers are performing military duties and are honorably wearing the uniform of the United States. Congress expressly stated that aliens in this status, notwithstanding the provisions of Section 703 of the Nationality Act (8 U.S.C.A.), which deals with race, and notwithstanding the provisions of Section 726 (8 U.S.C.A.), which deals with alien enemies, are entitled to be admitted to citizenship, regardless of age, and without the necessity of a declaration of intention, and no period of residence within the United States being required. It further provided that such a petition could be filed in any court having jurisdiction, irrespective of the residence of the applicant; that the petitioner be not even required to speak the English language nor to be able to sign his petition, nor to meet any educational test whatever, and that no fee should be charged or collected.

Then, in Section 1004 of this Act (8 U.S.C.A.) there appears the express provision: "[That the Act] shall not apply to * * * any conscientious objector who performed no military duty whatever or who refused to wear the uniform".

In Luria v. United States, 231 U.S. 9–24, 34 S.Ct. 10, 13, 58 L.Ed. 101, in interpreting naturalization laws, it was said, "What is clearly implied is as much a part of a law as what is expressed."

It seems to me there is no room for difference of opinion as to the construction that must be placed upon the quoted language of the act. If conscientious objectors, who are aliens, performing military duty, and wearing the uniform, are not granted the privileges of citizenship under this act, then the act would be meaningless. It would be so made if an applicant, being a conscientious objector, who has attained the status of a soldier, performs military duty, and honorably wears the uniform (as is admitted in the instant cases), is denied citizenship. If the oath of allegiance is to be construed as requiring such applicant to agree, without mental reservation, to bear arms, then the result would be a denial of citizenship, even though Congress has conferred such privilege upon him.

The language employed by Congress, as quoted above, is stated in the negative; that is, "[that it] shall not apply", etc. This language, by any theory of construction, must, therefore, imply the affirmative; that is, that a conscientious objector performing military duty and wearing the uniform, if he be an alien, is, upon application, entitled to citizenship, even though he be a conscientious objector. Otherwise, the language of the act would be of no purpose.

I, therefore, find that Congress has specifically covered the situation here presented and provided for the naturalization of applicants such as these. If expression be given to Congressional enactment, it can not be held that alien applicants for citizenship, who are performing military duty and wearing the uniform, must have read

524

into the oath of allegiance administered to them their willingness to bear arms, which is contrary to their religious convictions, since it is only by reason of such convictions that they find themselves serving in the armed forces in their present status of non-combatants, who are conscientious objectors.

The motion of the Immigration Service to dismiss the petitions of the applicants must be denied, and the applicants' petitions for citizenship granted.