## In re SHEE MUI CHONG YUEN'S REPATRIATION.

(No. 38.

District Court, Hawaii.

Feb. 8, 1944.

Rehearing Denied Sept. 13, 1944.

No attorneys.

McLAUGHLIN, Judge.

This memorandum is prepared and filed for the purpose of recording the reasons why the above indicated application for repatriation was on January 27, 1944, denied.

According to her application filed January 18, 1944, Shee Mui Chong Yuen was born on Oahu, Territory of Hawaii, United States of America, on August 6, 1903. She lost her citizenship on June 26, 1920, when she married Yin Poy (Yuen Poy), a citizen of the Republic of China, born at Canton, China, on March 26, 1881. The applicant has resided continuously in the United States since her birth, and hence, for the purposes of the statute, since the date of her marriage.

By these facts, the Act of June 25, 1936, 49 Stat. 1917, as amended by Act July 2, 1940, 54 Stat. 715, old 8 U.S.C.A. § 9a, is sought to be invoked as a basis for coming within 8 U.S.C.A. § 735, which prescribes the oath to be taken by a "person who has petitioned for naturalization."

The applicant was not represented by counsel. The Government was represented by a representative of the Immigration and Naturalization Service, Department of Justice.

The Government contended that the Court should grant the application because by the Act of June 25, 1936, as amended, applicant was automatically restored to citizenship by operation of law on July 2, 1940—the date of the amendment fitting the facts in this case. The Government goes forward in its reasoning to say she should now in 1944 be allowed to take such an oath because under this statute applicant though a citizen could not exercise any rights of citizenship until she has taken an oath of allegiance.

The application was denied—and with full knowledge of In re Watson's Repatria-

tion, D.C., 42 F.Supp. 163, of administrative construction, and of the fact that other Federal courts in uncontested cases have, without opinions being rendered, granted like applications since January 13, 1941, the effective date of the Nationality Act of 1940.

The Nationality Act repealed all prior citizenship law but specifically provided that "nationality" previously acquired was not disturbed by the repeal. Upon such the Government, and the court in In re Watson's Repatriation speak of the applicant having a "vested" right of citizenship.

 There is not and never has been such a thing as a vested right to acquire United States citizenship or in any particular method of naturalization. Linklater v. Perkins, 1934, 64 App.D.C. 69, 74 F.2d 473; United States v. Shapiro, D.C.S.D. Cal.1942, 43 F.Supp. 927. Naturalization is a privilege, not a right. United States v. Dang Mew Wan Lum, 9 Cir., 1937, 88 F.2d 88; In re Scriver, D.C.W.D.N.Y.1935, 9 F.Supp. 478; United States v. Ritzen, D. C.Tex.1943, 50 F.Supp. 301. All doubts concerning the grant of citizenship are to be resolved in favor of the United States. United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302.; United States v. Manzi, 276 U.S. 463, 48 S.Ct. 328, 72 L. Ed. 654.

We have, and have always had, in our country but one class of citizens, namely, full fledged citizens. If the Department of Justice is correct the Act of 1936 as amended created a new kind of quasi citizen—one with all of the duties but none of the rights. But the Department is in error, and it conceded the same in Shelley v. United States, 1941, 74 App.D.C. 181, 120 F.2d 734, at page 735:

"The government contends that this statute made appellant a citizen at once. If that is true her appeal is moot. But the government concedes that its construction of the statute 'is not in harmony with the legislative intention expressed in the committee report and debates on the bill. It is apparent therefrom that it was the intention of the framers of the Act to defer repatriation until the oath of allegiance was taken.' The government asks us to ignore what it concedes to be the actual intent of Congress, on the theory that the statute clearly expresses a different intent. We are not prepared to assert that Congress clearly said the opposite of what it meant. It is possible to interpret the statutory proviso as meaning 'Provided that she shall first take the oath of allegiance.' The other interpretation, for which the government contends, would involve this paradox, that Congress created a class of so-called 'citizens' from whom, although they had committed no offense, it withheld all the rights of citizens. Resort to the usual evidence of congressional intent is proper. That evidence makes it clear that an expatriated wife does not become repatriated until she takes the oath of allegiance. This appeal, therefore, is not moot."

 Neither the applicant nor anyone else acquired citizenship under the Act of 1936 as amended until, during the lifetime of the statute it was invoked, and under it an oath of allegiance was taken in the prescribed manner.

[4]. For the foregoing reasons, as applicant had neither citizenship nor a vested right to the same upon the effective date of the Nationality Act, and as that Act repealed the Act of 1936, applicant by inaction has lost the opportunity of acquiring citizenship by this now extinct method. This is not to say that applicant cannot seek citizenship by other existing methods, especially since the repeal of the Chinese Exclusion Acts, 8 U.S.C.A. § 263 et seq.

If the Naturalization Service refuses, as it has in the past, to permit applicant and others to file petitions under the Nationality Act because that Service says she and they are already citizens, upon proper application this Court will order the Service to allow the filing of such petitions.

In conclusion, it should be pointed out that the Court explained to the applicant, as this decision was out of harmony with the views of others and other courts, though consistent with prior oral rulings of this Court, that she had a right to appeal to the United States Circuit Court of Appeals for the Ninth Circuit.

On Motion for Rehearing.

On February 8, 1944, this Court filed a memorandum opinion stating its reasons for denying on January 27, 1944, the applicant's petition of January 18, 1944, for repatriation under the Act of 1936 as amended, old 8 U.S.C.A. § 9a.

The Naturalization Service filed on August 8, 1944, this motion for rehearing.

It is alleged in support of the motion that the Court was in error in ruling that the Act of June 25, 1936, as amended had been repealed completely by the Nationality Act of 1940. 8 U.S.C.A. § 904. Specifically it is said that only the original Act of June 25, 1936, was repealed by the Nationality Act, and hence the amendment of July 2, 1940, remained and is still alive. It is argued that since both the Nationality Act and the amendment of July 2, 1940, passed the same Congress, that it is unlikely that Congress meant to repeal the amendment of July 2, 1940, especially since it did not cover the same point in the new Nationality code.

The argument does not impress me as sound and the motion is therefore denied.

■ In the first place, as a practical matter, amendments to an Act fall with the specific repeal of the basic statute. An amendment may be likened to a patch upon a tire. When the tire blows out, the usefulness of the patch is nil.

■■ Secondly, the Act of October 14, 1940, was the enactment of a code. Indeed, it is specially denominated as the Nationality Code. 8 U.S.C.A. § 907, by § 904:

"All Acts or parts of Acts in conflict with the provisions of this chapter * * * are hereby repealed."

The Act of June 25, 1936, is designated as being expressly repealed. That meant that that Act as it stood on October 14, 1940, was repealed effective as of the date in January, 1941, when the new code went into operation. Even if the Nationality Code had had no such repealing clause as above quoted, still

"As a general rule, the enactment of revisions and codes manifestly designed to embrace an entire subject of legislation, operates to repeal former acts dealing with the same subject * * * Under this rule, all parts and provisions of the former act or acts, that are omitted from the revised act, are repealed, even though the omission may have been the result of inadvertence. The application of the rule is not dependent on the inconsistency or repugnancy of the new legislation and the old; * * *" 50 Am.Jur. Statutes, § 556.

Finally, though the Service here states that the code repealed all of the 1936 Act except the amendment of 1940, its Regulations treat the entire 1936 Act as being still alive. See Naturalization Service's Nationality Regulations § 330.2, Fed.Reg. Vol. 6, No. 8, Jan. 11, 1941 (misprinted in code of Fed.Reg. Title 8, Chap. I, Sec. 330.2). The Service being forced to concede the repeal of the 1936 Act takes refuge in the doctrine that persons who came within the provisions of the 1936 Act as amended, but who fail to take advantage of it during its existence, are nevertheless to be deemed citizens though the rights of citizenship are not exercisable until an oath of allegiance has been taken. As before remarked, there is but one kind of a citizen in our country, and no such thing as a vested right to become a citizen. The Service has admitted this. Shelley v. United States, 1941, 74 App.D.C. 181, 120 F.2d 734, at page 735. If the Service would alter its regulations, all of the persons for whom they have such concern, but who failed themselves to do anything while the 1936 Act was alive, could be naturalized under § 717 (a) and (b) of the Nationality Code.

For these reasons, as above indicated, the motion is denied.