## In re PORTNER.
### No. 162318.

District Court, E. D. Pennsylvania.

June 27, 1944.

Thomas J. McKeghney, U. S. Department of Justice, of Washington, D. C., for the Government.

KALODNER, District Judge.

The Immigration and Naturalization Service has submitted for my determination the petition for naturalization filed by Charles Portner under Section 310(a) of the Nationality Code of 1940, 54 Stat. 1144, 8 U.S.C.A. § 710(a). This section makes it unnecessary to file a declaration of intention, and requires only one year of continuous residence in the United States immediately preceding filing of the petition, where petitioner is an alien who after September 21, 1922, and prior to May 24, 1934, married a citizen of the United States, or who married prior to May 24, 1934, a spouse who was naturalized during such period and during the existence of the marital relations.

Charles Portner was born on December 5, 1902, in Smela, Russia, and entered the United States on September 20, 1906. On June 17, 1932, he married Dianne Katz, a native of the United States. Prior to her marriage to the petitioner, Dianne married, on January 17, 1922, one David Miller, who was not a citizen of the United States at that time; this marriage terminated with the death of Mr. Miller on December 28, 1928. There is no dispute that because of this prior marriage, Dianne lost her citizenship by virtue of the application of Section 3 of the Act of March 2, 1907, 34 Stat. 1228, repealed effective September 22, 1922, 42 Stat. 1022.

On June 25, 1936, Congress passed the following Act (An Act to repatriate native-born women who have heretofore lost their citizenship by marriage to an alien):

"That hereafter a woman, being a native-born citizen, who has or is believed to have lost her United States Citizenship solely by reason of her marriage prior to September 22, 1922, to an alien, and whose marital status with such alien has or shall have terminated, shall be deemed to be a citizen of the United States to the same extent as though her marriage to said alien had taken place on or after September 22, 1922: Provided, however, That no such woman shall have or claim any rights as a citizen of the United States until she shall have duly taken the oath of allegiance prescribed in section 4 of the Act approved June 29, 1906 * * *." 49 Stat.1917, June 25, 1936.

It does not appear that Mrs. Portner ever took the oath of allegiance required by the Act above quoted. The only question presented here is whether her citizenship was restored by that act to the extent that her husband, Charles Portner, is entitled to take advantage of Section 310(a) of the Nationality Code of 1940.

Although the cases on this point are few, they are, unfortunately, in conflict as to the effect of the proviso. In re Watson's Repatriation, D.C.E.D.Ill., 1941, 42 F.Supp. 163, and Petition of Davies, D.C.M.D.Pa., 53 F.Supp. 426, held that the woman regained citizenship on June 25, 1936, the date of the Act, and it was unnecessary for her to take the oath of allegiance except, as stated in the former case, as tangible evidence of the existence of her rights of citizenship. In the case of In re De Santis, D.C.E.D.Pa., 56 F.Supp. 101, where the facts were almost the same as in this case, I held that the wife was not a citizen until she had taken the oath. In that case, I said:

"Helen Marie Schulz lost her citizenship under Section 3 of the Act of March 2, 1907 by taking a positive step—her marriage to an alien; under the Act of June 25, 1936 she must take an equally positive step

—she must swear Allegiance—before she may regain her citizenship."

The same result was reached in Shelley v. United States, 1941, 74 App.D.C. 181, 120 F.2d 734. There, Judge Edgerton, in discussing the same problem, stated, 120 F.2d at page 735:

"But the government concedes that its construction of the statute 'is not in harmony with the legislative intention expressed in the committee report and debates on the bill. It is apparent therefrom that it was the intention of the framers of the Act to defer repatriation until the oath of allegiance was taken.' The government asks us to ignore what it concedes to be the actual intent of Congress, on the theory that the statute clearly expresses a different intent. We are not prepared to assert that Congress clearly said the opposite of what it meant. It is possible to interpret the statutory proviso as meaning 'Provided that she shall first take the oath of allegiance.' The other interpretation, for which the government contends, would involve this paradox, that Congress created a class of so-called 'citizens' from whom, although they had committed no offense, it withheld all the rights of citizens. Resort to the usual evidence of congressional intent is proper. That evidence makes it clear that an expatriated wife does not become repatriated until she takes the oath of allegiance."

In resorting to the Congressional Record, this statement will be found with reference to the Act of June 25, 1936:

"Mr. Dickstein: * * * This bill provides a *short form of naturalization* allowing native-born women, who have lost their citizenship through marriage to an alien, *to take the oath of allegiance to the United States and thereby be repatriated.*" 80 Cong.Rec. 9971, 74th Cong.2dSess., 1936. (Emphasis supplied.)

It is crystal clear that Congress intended that the wife take an affirmative step—the oath of allegiance—to regain her citizenship.

That the oath of allegiance is to be considered merely "tangible evidence" of the existence of the rights of citizenship seems to be inconsistent with the function of the oath in our naturalization system. Cf. United States v. Macintosh, 1931, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; United States v. Bland, 1931, 283 U.S. 636, 51 S.Ct. 569, 75 L.Ed. 1319; United States v. Schwimmer, 1929, 279 U.S. 644, 49 S.Ct.

448, 73 L.Ed. 889; and see In re Losey, D.C.E.D.Wash., 1941, 39 F.Supp. 37.

When Congress enacted the Nationality Act of 1940, it clarified its intent with a section that leaves no room for doubt (54 Stat. 1146, 8 U.S.C.A. § 717(b) (1):

" * * * a woman, who was a citizen of the United States at birth, and who has or is believed to have lost her United States citizenship solely by reason of her marriage prior to September 22, 1922, to an alien, and whose marital status with such alien has or shall have terminated, * * * shall, *from and after the taking of the oath of allegiance* * * * be deemed to be a citizen of the United States to the same extent as though her marriage to said alien had taken place on or after September 22, 1922."

In view of the fact that Mrs. Portner has not taken the oath of allegiance, she is not a citizen, and her husband is not entitled to be granted citizenship by virtue of his marriage to her under the provisions of Sec. 310(a) of the Nationality Act of 1940.

The petition must be and accordingly is hereby denied.