In re APPUGLIESE.

In re OPRE.

In re TENKE.

In re BRENNER.

Nos. 2530–P–64215, 2530–P–90224, 2530–P–91795, 2530–P–96090.

District Court, N. D. Ohio, E. D.
Jan. 26, 1945.

No counsel for applicants.

J. C. Stewart, Chief of Nationality and Status, of Cleveland, Ohio, for Immigration & Naturalization Service of Department of Justice.

WILKIN, District Judge.

The applications for citizenship in these four cases were denied. Two of the applicants were devotees of the Watchtower Bible and Tract Society, who are known as Jehovah's Witnesses, one was a member of Congregazione Christiana, and one was a Seventh Day Adventist. They said they were willing to take the oath of allegiance, but when questioned by the Examiner of the Service they said they had conscientious objections to military service except in a very limited way; they were conscientiously opposed to the taking of human life. The Service declined to approve their applications or recommend them for citizenship upon the authority of United States v. Schwimmer, 279 U.S. 644, 49 S. Ct. 448, 73 L.Ed. 889; United States v. McIntosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; United States v. Bland, 283 U.S. 636, 51 S.Ct. 569, 75 L.Ed. 1319; and this court sustains the Service.

Some of the applicants cited the case of In re Kinloch, D.C., 53 F.Supp. 521, which held that conscientious objectors, if they were performing military duties and assuming the hazards and responsibilities of soldiers even though not bearing arms, were entitled to naturalization. That decision was based on the wording of the statute which provided for naturalization of persons performing military duties. The facts and the law distinguish that case from all four cases here considered. Without deciding now what this court would do in a case similar to In re Kinloch, this court adheres to the principles established by the three decisions of the Supreme Court relied on by the Service.

In the four cases submitted here the applicants said they were willing to comply with the law because the Selective Service Act, 50 U.S.C.A.Appendix § 305, exempts conscientious objectors from the obligation to bear arms. But that argument comes with poor grace from Jehovah's Witnesses because very generally they have refused to render even "work of national importance", as required of conscientious objectors by the Selective Service Act. This court has had to impose sentences upon hundreds of such Witnesses who have refused to be inducted for any purpose.

The question, however, is not whether the applicant is willing to comply with the present law: the question is whether the applicant has that faith in and allegiance to the United States which will enable him always to support and defend the Constitution and the laws of the United States against all enemies, both foreign and domestic, as required by the oath of allegiance. That faith and devotion which would seem to be sufficient under the present law might not be sufficient under some future law passed at a time when this country's very existence was so threatened that full and complete military service might be required.

The faith and devotion which an applicant for citizenship should have is that faith and devotion which is best exemplified by those men who established the United States and who preserved it when it was threatened. The War for Independence, the War to Preserve the Union, and World War I and II to preserve the principles of our government against that despotism which threatened to efface democracy from the earth, were not won by conscientious objectors. The men who established and maintained the United States were men who saw no inconsistency between devotion to that kind of government and devotion to God. They knew how to render unto

Caesar that which is Caesar's while at the same time rendering unto God that which is God's. In other words, they recognized their full civil obligation to that kind of state which alone could give them security and respect as human beings. They allowed neither sentimentality nor sophistry to interfere with the full performance of that obligation. Devotion to Christian principles of charity and peace is not inconsistent with the bearing of arms against those forces which seek to destroy the very forms of government that champion that freedom which is necessary for the teaching and practice of such principles.

There is deep spiritual truth and practical wisdom in such sayings as "Blessed is the peace-maker", "Vengeance is mine, sayeth the Lord", "A soft answer turneth away wrath", etc. There are many times when violence can best be avoided or averted by charity and magnanimity. But there are also times when force is necessary for the maintenance of order and the protection of society. This is not a perfect life; evil is in the world. The object of just government is to bring evil-doers into subjection to law. Maitland said: "The law has need of arms; Justinian knew it well." The minimum of strife and the maximum of peace in such a world are attained by upholding the law. Those who bear arms to support and defend the law are therefore ministers of peace. Those who refuse to do so give encouragement to evil. The Prince of Peace gave his blessing to the centurion.

To demand full and unquestioning allegiance to our government is not to deny freedom of religion; because our government and the men who defend it are champions of freedom of religion against those who seek to destroy it. The Congress has graciously made generous allowance for differences of religious conviction regarding war; but that is not to be construed as a concession that religious scruples transcend the inherent power of the sovereign state to command its citizens to bear arms in its defense. It may be admitted that our government might at some time degenerate to the point where a God-fearing man could no longer bear arms in support of it. At that time God-fearing men will decline to do so and take the consequences. They will not seek citizenship. But at the present time loyal citizens have faith and confidence that allegiance to our principles of government will preserve that

form of government which creates no conflict between devotion to God and devotion to one's fellow men. It is the very faith and allegiance which conscientious objectors lack that is essential to the maintenance of our form of government. And it may be remarked in passing that the same faith and allegiance will be required if we are to have lawful order in the world.

This court looks with grave apprehension upon any tendency to weaken or depart from the basic reasoning of the Supreme Court in the three cases cited. This court, moreover, does not overlook the dissenting opinions in those cases. No court can lightly disregard the views of such justices as Holmes, Brandeis, Hughes, and Stone. But it seems to this court that generosity of sentiment and magnanimity of judgment can not be indulged in such cases as these. When the quality of an applicant's allegiance to our government is the issue we cannot afford to be lax or generous. We must expect that full measure of devotion which we have found again and again is required to preserve our sacred institutions. There are no grades or degrees of citizenship; there should be no grades or degrees of allegiance. Like chastity, allegiance is absolute, or it does not exist.