**In re NIELSEN.**

No. 17796M.

District Court of the United States for the District of Columbia.

April 23, 1945.

---

[2] 49 U.S.C.A. § 322.

No counsel for applicant.

McGUIRE, Associate Justice.

■ Petitioner religiously is a Seventh-day Adventist. He said he is willing to take the oath of allegiance, but would qualify that part of the oath which would require him to support and defend the Constitution of the United States against all enemies foreign and domestic as he is as a matter of religious scruples opposed to the taking of human life.[1]

If such were all the facts, then obviously upon the authority of United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889; United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; United States v. Bland, 283 U.S. 636, 51 S.Ct. 569, 75 L.Ed. 1319; Shelley v. United States 74 App.D.C. 181, 120 F.2d 734, the petition should be denied.

But there is an additional fact of importance.

The applicant *was inducted* into the armed forces and served as a member of such from October 26, 1943 to December 1st of that year when he was honorably

---

[1] Seventh-Day Adventist War Service Commission
General Conference of Seventh-Day Adventists Takoma Park, Washington, D. C. (Reprinted May, 1942)

Seventh-Day Adventist and Civil Government

This statement was authorized by the General Conference Committee of Seventh-day Adventists, September 25, 1940. Takoma Park, Washington, D.C.

* * * Relation of Seventh-day Adventists to War.

In harmony with their profession as followers of the Prince of Peace, can Seventh-day Adventists engage in the destruction of their fellow men? This is a question which has confronted the members of the Seventh-day Adventist Church from its early history. From their study of life and example of Christ and the teachings of the gospel, they have from the time of their organization been noncombatants. * * *

* * * In May, 1934, the General Conference Committee of Seventh-day Adventists approved a document of instruction to the youth of its church, two paragraphs of which refer to noncombatancy as follows:

"The Noncombatants.—While recognizing that warfare is unavoidable in maintaining civil government in a world of sin, noncombatants conscientiously object to taking human life. They believe that in this way they can render a greater service to their fellow men and be a greater influence for the cause of righteousness than by taking combatant part in the destruction of human life. They do not, however, condemn those who take part in war. On the other hand, noncombatants are willing to aid their government in every consistent way in time of warfare, except by taking human life. They will help to feed and clothe the Army; assist in caring for the sick and wounded; help to bury the dead; aid in the transportation of men, food, clothing, etc. They will build the camps; go into the fields, mines and factories, at the direction of the government. They will help to fortify positions and otherwise protect human life. They will carry the wounded back from the front. The noncombatant is not a coward; he simply and conscientiously and courageously objects to taking human life, so far as his participation is concerned.

"Seventh-day Adventists of the United States are registered with our Government as noncombatants. They are always ready to serve without reservation, except bearing arms in combat and doing unnecessary work on the Sabbath day. As a matter of duty and loyalty to human government which is ordained of God, they stand loyally and patriotically with their Government."

In this declaring the teaching of the church, this action made it plain that the member's own conviction must be the ultimate factor in this matter of conscience. The action further states:

"The church does not attempt to dictate to its members individually, but each person must stand upon his own conscientious convictions. * * *"

discharged for reasons that are not pertinent.

While so serving he took the soldier's oath,[2] wore the uniform and performed such military duties as were required in a medical training center to which he was attached, which did not include instruction in the use of combat weapons, nor was he required to submit himself to such instruction inasmuch as he stated upon induction that he was a Seventh-day Adventist.

He now claims, however, that by reason of such service and because of the fact he took the soldier's oath he is *entitled* to citizenship under the provisions of 8 U.S.C.A. §§ 1001–1005 inclusive, and the authority of In re Kinloch, D.C., 53 F. Supp. 521, and the Department of Justice so recommends.

I am unable to concur. True he *is* qualified for citizenship *provided* he complies with certain essential prerequisites—one of which is the taking of the prescribed oath of allegiance. His military service in no way relieves him of the obligation of compliance.

■ The statute, supra, does not make naturalization of persons serving in the armed forces of the United States *mandatory,* it is still discretionary with the court.

Although certain hitherto indispensable conditions are waived.

And thirdly its provisions " * * * Shall not apply to (1) * * * or (2) any conscientious objector who performed no military duty whatever or refused to wear the uniform" (§ 1004)—all of the other requirements are specifically retained,[3] among them the oath of allegiance infra.

Nowhere is it stated that the soldier's oath shall take the place of the oath of allegiance required of applicants for citizenship—which is *mandatory* (Title 8 U.S.C.A. § 735 (a) (b), " * * * that I will *support* and *defend* the Constitution and laws of the United States *against* all *enemies,* foreign and domestic * * * and that I take this obligation freely *without any mental reservation* * * *" (Italics supplied).

I can find no warrant in law permitting the court to permit the taking of this oath with the limitation or qualification desired to be added to it by the applicant.

True, as referred to previously, he served in the armed forces—he had no choice—and upon being inducted he immediately claimed his status as a conscientious objector and under the provisions of that law was given noncombatant service.[4]

He petitions for citizenship which is a *privilege* and not a right, and then places upon the correlative duty it demands, a qualification and a limitation he has no right to impose.

Congress has placed, once granted, no limitation on the privilege—the applicant to gain the former, must take the oath which is the requisite and prescribed condition precedent and can not be heard to qualify or limit it either in terms or substance.

Indeed "It is not within the province of the courts to make bargains with those who seek naturalization. They must accept the grant and take the oath in accordance with the terms fixed by the law, or forego the privilege of citizenship. There is no middle choice. If one qualification of the oath be allowed, the door is opened for others, with utter confusion as the probable final result." United States v. Macintosh, supra [283 U.S. 605, 51 S.Ct. 575].

This in no way negatives the right of any man to live by his conscience or the constitutional provision relating to freedom of religion. Indeed the world would be much better if men in the aggregate did so—true, men have gone to the scaffold, the block and the stake for their adherence to what they believed to be the voice of God, but under circumstances where *they* were being *compelled* to do violence to their conscience and convictions by the fiat of the state. We have no such situation here—he is not being compelled to *do* anything—but he *asks* for the *privilege* of citizenship, and then wants to limit its reciprocal obligation with a reservation which he, as a *seeker* of the privilege, has no right to impose.

Title 8 U.S.C.A. §§ 1001–1005, neither abrogates, limits or in any other way quali-

---

[2] "I, ———, do solemnly swear (or affirm) that I will bear true faith and allegiance to the United States of America; that I will serve them honestly and faithfully against all other enemies whomsoever; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to the Rules and Articles of War."

[3] Title 8 U.S.C.A. § 1001.

[4] Title 50 U.S.C.A. Appendix, § 305(g).

fies the law as laid down in the Schwimmer, Bland, Macintosh and Shelley cases, cited supra.

The application is denied.