## UNITED STATES *ex rel.* REDFIELD *v.* WINDOM.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 1301.   Argued December 18, 1890.—Decided January 12, 1891.

Cases cited in which it has been decided that a person holding public office may be compelled by writ of mandamus to perform the duties imposed upon him by law.

When the duty which the court is asked to enforce by mandamus is plainly ministerial, and the right of the party applying for the writ is clear, and he is without other adequate remedy, the writ may issue ; but, where the effect of the writ is to discharge or control the head of an Executive Department in the discharge of a duty involving the exercise of judgment or discretion, it should not issue.

Cases cited and referred to in which a writ of mandamus will not be issued to compel the performance of even a purely ministerial act.

M. furnished material and performed labor for the United States under a contract, and when the work was done and the materials furnished he presented his account to the proper officer for adjustment and settlement. The balance was found to be correct so far as the labor and material were concerned, but it was also found that through penalties and forfeitures that balance was liable to be materially reduced. It also appeared that M. was indebted to mechanics, sub-contractors, laborers and material men in a large amount for work done and materials furnished under the contract. The treasury officials agreed with M. that this account should be adjusted without enforcing the penalties and forfeitures, if he would consent that his said indebtedness should be paid out of the sum so allowed, and that the control of the money should not be given up until those claims were satisfied. He assented, and a draft was prepared accordingly. M. did not comply with those conditions, but instead thereof applied to the Supreme Court of the District of Columbia for leave to file an application for a writ of mandamus, to compel the Secretary of the Treasury to deliver the draft to him, without first making the agreed payments. That officer made a return to the petition, setting forth the foregoing facts. *Held,*

    (1) That the return showed disputed questions of law and fact, which ought not to be tried in a proceeding for a mandamus, and that this was sufficient cause for the discharge of the rule and the refusal to issue the writ ;

    (2) That the agreement between M. and the accounting officers was lawful, and, if carried out, would have been proper.

THE case is stated in the opinion.

*Mr. Franklin H. Mackey* for the relator.

*Mr. Assistant Attorney General Maury* for the Secretary of the Treasury, in opposition.

MR. JUSTICE LAMAR delivered the opinion of the court.

This is a writ of error to the Supreme Court of the District of Columbia, to reverse a judgment of that court dismissing the relator's petition for a peremptory writ of mandamus against the respondent, William Windom, Secretary of the Treasury, commanding him to deliver to the relator a Treasury draft for $ 12,536 which had been lawfully assigned to the relator by William Mitchell, the payee.

The petition and its amendments allege that William Mitchell, in pursuance of a contract made with the United States on the third of September, 1886, furnished certain material and performed certain labor for the Life Saving Service, in the construction and repair of seven houses on the coast of Long Island in the State of New York; that his account therefor was adjusted on the 11th of February, 1888, by the Treasury Department, as shown by a letter from the Commissioner of Customs to Mitchell, stating that the sum of $12,536 was due to Mitchell, and adding, "draft will be remitted;" that the account having been so adjusted nothing remained to be done by the Treasury officials but the ministerial duty of issuing a warrant and remitting to Mitchell a draft for the amount so found to be due; and that a draft, dated the 15th of February, 1888, was issued to Mitchell, but instead of being delivered to him or paid, it was sent to Captain George W. Moore, of the Life Saving Service, at New York, with instructions not to deliver said draft, nor to pay its amount to Mitchell, until Mitchell should pay certain claims presented against him, at the Treasury Department, to persons alleging his indebtedness to them for materials and labor. The petition further averred that there was no discretion residing in the respondent, the Secretary of the Treasury, or in any other government officer, as to the delivery of said draft; that none of those officers had any right or authority to interfere with Mitchell's private business, or to adjust any claims against him; that such an attempt on their part was a violation of Mitchell's rights and of the rights of the relator as his assignee; that Moore, in pursuance of the Secretary's instructions, did not deliver the draft or pay the amount of it to Mitchell, but returned it to the Secretary of the Treasury, who still retains the same in his possession, and still refuses to deliver it or to pay any part thereof to either Mitchell or the relator; that the said claims against Mitchell are unjust, and amount to $12,503, or within $33 of the amount of said draft; that even if they were not unjust the relator has no authority, under the terms of the assignment, to pay them, and has no means to pay them until the said draft is either delivered or

paid to him; that the respondent does not deny the correctness of the account, or the amount found to be due to Mitchell, but bases his refusal to deliver the draft simply upon the ground that Mitchell has not paid the sums demanded of him by the persons who presented their claims at the Treasury Department; that about the 27th day of February, 1888, Mitchell, under certain proceedings under the laws of New York, set forth the indebtedness of the United States to him, and the detention of the draft as herein stated; that the Supreme Court of the city and county of New York, in the course of these proceedings, appointed the relator receiver of all of Mitchell's property, debts, equitable rights, interests, and effects, real and personal; that he, the relator, was duly qualified, and, by virtue of said order, was entitled to demand and to receive the said draft for $12,536; and that Mitchell, for the purpose of enabling the relator to demand and receive said draft, and to apply the proceeds thereof according to the order appointing him receiver, assigned said draft to relator, giving him thereby full power to demand and receive it or the amount expressed in it.

By an amendment, the petition further alleged that " a general appropriation was made by act of Congress to provide for the payment of work to be done in the building and repairing of life-saving stations prior to the performance of the work done under the said contract of September 3, 1886, and that there is sufficient money now in the Treasury of the United States applicable to the payment of the said work so done under said contract." The prayer is for a writ of mandamus against Hon. William Windom, Secretary of the Treasury, commanding him to deliver or cause to be delivered to the relator the said draft, or show cause at an early date, and that such further order may be made in the premises as law and justice may require, or show cause, etc.

This petition and the order to show cause having been agreed by stipulation to be taken as the alternative writ, a demurrer was interposed, which was overruled by the court, and the respondent ordered to make return. Before the return was made, the relator was allowed to make further amendments,

designed to reply to what was expected to be set forth in the return.

The facts stated in the return are averred mainly upon information and belief, as they occurred under a former Secretary, the predecessor of the respondent.   It admits that an account was stated by the accounting officers of the Treasury Department on the 11th of February, 1888, under his predecessor, but that said account was stated, and a draft prepared for delivery upon condition, and under the circumstances expressed in the letters of certain officials of the Treasury Department which are filed by the relator as exhibits.   It then sets out in substance, though not· in the order as here stated, that the respondent is advised and believes that the said amount of $12,536 is not justly due and owing by the United States to Mitchell, or his lawful assignee, for the work done and materials ·furnished ; that the account referred to in the petition was adjusted, and a draft prepared for delivery, upon the condition, previously agreed to by Mitchell, that part of the $12,536, so allowed, should be applied to the satisfaction of the claims of certain mechanics, laborers and material men, by whose work and materials the houses were built and repaired ; that Mitchell, under his contract with the government, was liable to a penalty of thirty dollars per day for any delay in completing the work within the time stipulated ; that he had actually incurred penalties for delays amounting to $6240 ; that the remission of these penalties would not have been approved or recommended, and said adjustment of the account would not have been made, and said draft would not have been prepared, but for the above-mentioned conditions agreed to by Mitchell, that he should allow the disbursing officer, to whom the draft was sent, to pay the sub-contractors and workmen out of the proceeds of the draft ; that the conditions of the proposed waiver were not complied with by Mitchell, or the relator ; that the government has the right to insist· upon them, and deduct the penalties from the amount of said account; and that it is the legal right of the respondent to secure a restatement of said account, to cancel said draft, or to take such other course to secure said penalties and

forfeitures to the government as the laws and regulations of the Treasury Department may require. He further averred that to leave the relator to his remedy at law would enable the government to avail itself of the said forfeitures, or other just damages in the premises.

On the hearing, the court discharged the rule and denied the writ.

The main assignment of error is, that the court erred in not deciding that the duty of the Secretary to deliver the draft was purely a ministerial duty, of which the court should enforce the performance by a writ of mandamus. In order to determine whether the case presented by the record is a proper one for a mandamus, it is necessary to recur to certain statutory provisions bearing upon the powers and duties of the Secretary of the Treasury respecting the accounts to be settled in that department, and especially upon his relations to the accounting officers thereof.

The act of June 18, 1878, 20 Stat. 163, c. 265, to organize the Life Saving Service, and that of May 4, 1882, 22 Stat. 55, c. 117, to promote its efficiency, provide that the keepers of life saving stations, and the superintendents thereof, shall have the powers and perform the duties of inspectors of customs. The sections of the Revised Statutes material to be considered are the following:

Section 277 provides that —

"The First Auditor shall receive and examine all accounts accruing in the Treasury Department relating to the receipts from customs, including accounts of collectors, *and other officers of the customs* . . . and after examination of such accounts, relating to the receipts from customs, including the accounts of collectors and other officers of the customs, he shall certify the balances and transmit the same, with the vouchers and certificates, to the *Commissioner of Customs for his decision thereon,* and he shall certify the balances of all *other* accounts, and transmit the same in like manner, to the First Comptroller for his decision thereon."

SEC. 317 provides that —

"The Commissioner of Customs shall examine all accounts

settled by the First Auditor relating to the receipts from cus-
toms, including accounts of collectors and other officers of the
customs, and certify the balances arising thereon to the Regis-
ter, [and shall perform all the acts and exercise all the powers
relating to the receipts from customs and the accounts of col-
lectors, and the other officers of the customs or connected there-
with, devolved by section two hundred and sixty-nine upon the
First Comptroller in regard to other receipts and other ac-
counts]."

"SEC. 191. The balances which may from time to time be
stated by the Auditor and certified to the heads of Depart-
ments by the Commissioner of Customs, or the Comptrollers
of the Treasury, upon the settlement of public accounts, shall
not be subject to be changed or modified by the heads of
Departments, but shall be conclusive upon the executive
branch of the Government, and be subject to revision only by
Congress or the proper courts. The head of the proper
Department, before signing a warrant for any balance certi-
fied to him by a Comptroller, may, however, submit to such
Comptroller any facts in his judgment affecting the correctness
of such balance, but the decision of the Comptroller thereon
shall be final and conclusive, as hereinbefore provided."

The contention of the counsel for the relator is, that Mitchell
performed his contract with the United States to construct
and repair certain houses for the Life Saving Service; that his
account for the work done and the materials furnished was
examined by the proper accounting officer; that a balance
was found in Mitchell's favor in the amount of $12,536; that
this balance was certified by the Commissioner of Customs to
the Secretary of the Treasury; and that the Secretary did
not dispute this indebtedness of the United States to Mitchell,
nor submit to the proper accounting officers any facts affecting
the correctness of the said balance, but assented to its correct-
ness by issuing a warrant and having prepared a draft for its
payment. It is insisted that the Secretary after issuing this
warrant has no power to change or modify the balance thus
found and certified; but that his duty to deliver the draft to
Mitchell, or his assignee, is purely a ministerial one, and that

the writ of mandamus should issue to compel the performance of that duty.

This argument would be conclusive as to the right of the relator to the remedy prayed for if the facts which it assumes comprised all the facts presented by the record. The statutes which we have quoted are very explicit in designating the officers to whom the right and duty belong of examining and auditing the accounts therein referred to, and of certifying and transmitting the balances of the same to the Commissioner of Customs for his decision thereon; and they expressly provide that when those accounts are examined by those accounting officers in successive grades, the balances stated by the Auditor and certified to the heads of department by the Commissioner shall be conclusive upon the executive branch of the government. There is nothing in the language of these provisions which expressly or by implication vests in the Secretary the power to revise or disallow any part of these accounts. On the contrary, it is clearly his duty to issue a warrant for the payment of any balance without any change or modification, except that before issuing a warrant for any balance certified to by a Comptroller, he may submit to such Comptroller any facts in his judgment affecting the correctness of such balance; but the decision of the Comptroller thereon shall be final and conclusive.

The principles upon which persons holding public office may be compelled by a writ of mandamus to perform duties imposed by law have been distinctly defined and strictly adhered to in a great number and variety of cases before this court. *Marbury* v. *Madison,* 1 Cranch, 137; *Kendall* v. *United States,* 12 Pet. 524; *Decatur* v. *Paulding,* 14 Pet. 497; *Brashear* v. *Mason,* 6 How. 92, 101; *Goodrich* v. *Guthrie,* 17 How. 284; *Ex parte De Groot,* 6 Wall. 497; *Georgia* v. *Stanton,* 6 Wall. 50; *Gaines* v. *Thompson,* 7 Wall. 347; *United States* v. *Seaman,* 17 How. 225, 230; *Ex parte Bradstreet,* 7 Pet. 634; *Harrington* v. *Holler,* 111 U. S. 796; *Reeside* v. *Walker,* 11 How. 272, 290; *United States* v. *Schurz,* 102 U. S. 378, 394, 395; *Butterworth* v. *Hoe,* 112 U. S. 50; *United States ex rel. Dunlap* v. *Black,* 128 U. S. 40.

That principle is that the writ of mandamus may issue where the duty, which the court is asked to enforce, is plainly ministerial, and the right of the party applying for it is clear and he is without any other adequate remedy; and it cannot issue in a case where its effect is to direct or control the head of an executive department in the discharge of an executive duty involving the exercise of judgment or discretion. The doctrine to be gathered from these cases, as well those in which mandamus was granted as those in which it was refused, especially from the two leading cases, *Kendall* v. *United States, supra,* and *Decatur* v. *Paulding, supra,* is thus enunciated in *United States ex rel. Dunlap* v. *Black, supra,* by Mr. Justice Bradley, who delivered the opinion of the court:

" The court will not interfere by mandamus with the executive officers of the government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose; but when they refuse to act in a case at all, or when, by special statute, or otherwise, a mere ministerial duty is imposed upon them, that is, a service which they are bound to perform without further question, then, if they refuse, a mandamus may be issued to compel them." p. 48.

It is proper here to remark, as applicable to the determination of this case, that, in the extreme caution with which this remedy is applied by the courts, there are cases when the writ will not be issued to compel the performance of even a purely ministerial act. In a case, for instance, where the intention of the officer, though acting within the scope of his duty, had been frustrated by a clerical mistake, *United States* v. *Schurz, supra;* or where the case is one of doubtful right, *N. Y. Life and Fire Ins. Co.* v. *Wilson,* 8 Pet. 291, 302; or in a case where the relator having another adequate remedy, the granting of the writ may in this summary proceeding affect the rights of persons who are not parties thereto, or where it will be attended with manifest hardship and difficulties, *People* v. *Forquer,* Breese, [1 Ill.] 68, (2d ed., 104); *Van Rensselaer* v. *Sheriff of Albany,* 1 Cowen, 501, 512; *Oakes* v. *Hill,* 8 Pick. 46. In *The King* v. *The Lord Commissioners of the Treasury,*

4 Ad. & El. 286, 295, Lord Denman, Chief Justice, said : "If, as has been suggested, it should on any occasion be unsafe, with reference to the public service, to make a payment of this kind, the fact may be stated on return to the mandamus. There might perhaps be occasions on which the Lords Commissioners would be bound to apply the money to particular purposes of a more pressing nature."

We repeat that, if we confine our view of this case, as the counsel·for appellee contends that we should, to the adjustment of the account of Mitchell, as stated by the Auditor, the certificate of the balances of the Commissioner of Customs to the Secretary of the Treasury, the issue of the warrant by the latter for the payment of the balance so certified, the preparation of the draft, its transmission to the disbursing officer, the subsequent withholding of it by the Secretary of the Treasury, and his refusal to deliver it either to Mitchell or his assignee, the relator, the case is clearly one of ministerial duty. But the facts, circumstances and conditions set forth in the return of the Secretary of the Treasury place the matter in another and quite a different light. He states in his return that, under the·contract of Mitchell with the United States, Mitchell had actually incurred, by defaults, penalties and forfeitures to a large amount, the deduction of which from the amount of his account, as rendered, would reduce that amount largely ; that the entire adjustment of that account, including the waiver of the penalties incurred, the certification of the balances, and the issuing of the warrant and preparation of the draft for delivery, was upon the condition, agreed to by Mitchell, that out of the sum thus allowed by the department the claims of the mechanics, sub-contractors, laborers and material men, for work and material furnished by them in the erection of the station buildings, should be satisfied ; that an essential part of this agreement with Mitchell was that the control of the money to be paid was not to be given up until these claims of the aforesaid parties should, in some way, be settled ; that the draft for the amount agreed upon should be sent to the officer of the Life Saving Service at New York, by whom, with Mitchell, these parties, at some appointed time,

were first to be paid or satisfied out of said draft; and that, if this was not done, the draft was not to be delivered to Mitchell. He further states that Mitchell refused to perform this condition; and that the penalties would not have been waived but for that agreement; and says:

"In the opinion of the respondent said forfeitures and penalties may legally be insisted upon by the government and the amount thereof deducted from said draft, and it is the legal right of the respondent, in his opinion, to secure a restatement of said account, or to cancel said draft, or to take such other course to secure said penalties and forfeitures to the government as the laws and the regulations of the Treasury Department may require; and he avers that to leave the relator to his remedy at law would, in the respondent's opinion, enable the government to avail itself of the said forfeitures or other just damages in the premises."

We think that this return showed sufficient cause for a discharge of the rule and a refusal to issue the writ. It certainly raises disputed questions of law and fact as to the amount of the actual indebtedness of the United States to Mitchell; as to his agreement that the draft should not be delivered until the claims of the sub-contractors, mechanics and material men should be satisfied out of the proceeds of said draft; as to whether the remission of the forfeiture was absolute or conditional; as to the validity of such agreement; and as to the legal effect of Mitchell's non-fulfilment of the contract. We concur with the court below that these disputed questions of law and fact should not be tried in this proceeding; and that this is not a case in which the power of the court should be exercised.

We have given due consideration to the ingenious argument of counsel for appellee to show that the return in terms does not assert that the remission of the penalties was conditioned as stated by the court below; and that if such condition was agreed to between the accounting officers and Mitchell, such agreement was illegal and void. We think neither of these points is well taken. As to the first, the court below correctly stated the substance of the return, as we have also attempted

to do. The objection really is that the averments of the return, upon this point, lack the essential requisites of good pleading. It does not appear that any such ground was taken in the court below. As to the second point, it is our opinion that the agreement between Mitchell and the accounting officers, as stated in the return, was lawful, and if carried out by Mitchell would have been fair and proper. It was simply that the amount which would otherwise have been excluded by reason of Mitchell's default from the balance certified and from the warrant for payment, should go in part to the payment of the men by whose labor and means the houses of the Life Saving Service had been built for the United States.

The judgment of the court below is

*Affirmed.*