**LINKLATER v. PERKINS, Secretary of Labor, et al.**

**No. 6266.**

United States Court of Appeals for the District of Columbia.

Argued Nov. 5, 1934.

Decided Dec. 3, 1934.

Frederick A. Ballard, of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and David A. Pine, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal from a judgment of the Supreme Court of the District of Columbia dismissing a petition for mandamus. The petitioner is an alien seeking to compel the Commissioner General of Immigration and the Secretary of Labor to issue to him a certificate showing his legal entry into the United States.

The Commissioner General and the Secretary filed an answer to the petition, justifying their refusal to issue such certificate both on the facts and the law, and denying the petitioner's right to a writ of mandamus. To this answer the petitioner demurred, and, from the order overruling his demurrer, he appealed.

The petitioner is a Scotsman, and avers that he entered the United States at Seattle on July 4, 1907, from Victoria, British Columbia; that no record or registry of his entry was then made by the immigration officials charged therewith; no certificate of such registry granted to him as required by law; and that no such registry or certificate has since been made or granted. He further avers that on February 1, 1928, he declared his intention to become a citizen of the United States before the clerk of the United States District Court at Portland, Or., and that his application for naturalization cannot be consummated without the aforesaid certificate of entry, which he has requested, but which has been refused, although the issuance thereof is a plain ministerial duty of the respondents and their subordinates. The answer of the respondents avers, among other matters, that such a certificate may lawfully be issued only after the applicant therefor has made a satisfactory showing of good moral character to the Commissioner General, which this applicant has failed to do, because he admits that he has committed perjury at least twice in respect of the time, place, and manner of his entry into the United States, in addition to making sundry other false statements thereabout not under oath.

Upon consideration of these facts and circumstances, the Commissioner General has decided that the applicant has not made a satisfactory showing of good moral character, and, since the duty of making this decision is placed upon him by the controlling statute, he submits that his decision is discretionary and not reviewable in mandamus, and that the petition was properly dismissed by the trial court.

The facts touching these matters were included in one paragraph of the answer, and, a motion to strike it out as irrelevant having been considered and denied by the court, they must be taken as admitted for consideration of this demurrer. These facts were gathered from official and judicial records, and indicate that Linklater has sworn that he first entered the United States at Seattle on July 4, 1907, by an unnamed ship; that he entered at New York by the S. S. Celtic on July 5, 1907; that he entered by birth at Toledo, Ohio, on March 8, 1883; and that he was born in New York on March 9, 1886.

There is no registry of his entry either at Seattle or New York, and his application for a certificate of entry was made more than 20 years after the fact, as he now avers it to be. The Commissioner General considered and disposed of this application under the Act of March 2, 1929 (45 Stat. 1512), section 1 (8 USCA § 106a), of which provides that:

"(a) The registry of aliens at ports of entry required by section 1 of the Act of June 29, 1906, * * * as amended, may be made as to any alien not ineligible to citizenship in whose case there is no record of admission for permanent residence, if such alien shall make a satisfactory showing to the Commissioner General of Immigration, in accordance with regulations prescribed by the Commissioner General of Immigration, with the approval of the Secretary of Labor, that he—

"(1) Entered the United States prior to June 3, 1921;

"(2) Has resided in the United States continuously since such entry;

"(3) Is a person of good moral character; and

"(4) Is not subject to deportation."

In performance of the duty imposed upon him by this statute, and in the exercise of the discretion therein required, the Commissioner General considered the evidence touching Linklater, including his sworn and unsworn statements regarding the entry which he requests the Commissioner General to certify nunc pro tunc, and decided that his showing of good moral character was not satisfactory.

■ The petitioner, on the argument here, admits that, if this statute controls the situation, the Commissioner General is within his jurisdiction, and the court without power to coerce him by mandamus. But he contends that the question is governed by the law as it stood at the time of his alleged entry, and the practice which grew up thereunder, and not by the law as it stood at the time of his application. And, further, that the act of 1929, which was intended to correct the abuses and hardships of the older law, and which petitioner describes as a liberalizing and remedial measure, applies only to persons who originally entered the United States unlawfully, and therefore is not applicable to him

The older law thus invoked is the act of 1906 (34 Stat. 596), section 1 (8 USCA § 106) of which states that: "It shall be the duty of the Bureau of Immigration [and Naturalization] to provide, for use at the various immigration stations throughout the United States, books of record, wherein the commissioners of immigration shall cause a registry to be made in the case of each alien arriving in the United States from and after the passage of this Act [June 29, 1906], of the name, age, occupation, personal description (including height, complexion, color of hair and eyes), the place of birth, the last residence, the intended place of residence in the United States, and the date of arrival of said alien, and, if entered through a port, the name of the vessel in which he comes. It shall be the duty of said commissioners of immigration to cause to be granted to such alien a certificate of such registry, with the particulars thereof."

Under this provision and the immigration statute then in force, if Linklater entered lawfully, submitted to examination, paid his head tax, or showed his right of exemption therefrom, he was entitled to be registered and to have a certificate of entry issued to him.

And, while his petition nowhere specifically avers that his entry was lawful, or that he did the things necessary to constitute a lawful entry, he contends that he is now being punished for the failure of immigration officers to do their duty when he entered.

This statute, which requires registry of every "alien arriving in the United States," obviously contemplates a record made at the time and place of arrival, whereby Congress, as the Supreme Court said in United States v. Ness, 245 U. S. at page 324, 38 S. Ct. 118, 120, 62 L. Ed. 321, recognized the "value of contemporary documentary evidence" in naturalization cases.

While this act contains no authority for subsequent registry or certificate of an alien's entry, a practice of issuing nunc pro tunc certificates grew up thereunder, and became the subject of much controversy and the means of many frauds. Such certificates were received and acted upon in numerous cases, as In re Schmidt (D. C.) 207 F. 678; In re Mc-Phee (D. C.) 209 F. 143; In re Pick (D. C.) 209 F. 999; and In re Titone (D. C.) 233 F. 175; but were questioned and criticized in others, as In re Olsen (D. C.) 18 F. (2d) 425; and wholly rejected In re Hollo (D. C.) 206 F. 852.

But no decision has been found where a refusal to issue such a certificate was made the basis of an action for mandamus or other legal remedy. However that may be, if Linklater had pursued the claim he now makes at any time during the twenty years intervening between his alleged entry and the enactment of the present statute, he could have obtained the doubtful advantage then flowing from the conflicting decisions and uncertain practice touching nunc pro tunc certificates.

But this possibility was closed by the act of 1929 (chapter 536, 45 Stat. 1512), which expressly authorized nunc pro tunc registry and certificate of entry, under specified conditions, "as to any alien not ineligible to citizenship in whose case there is no record of admission for permanent residence, if such alien shall make a satisfactory showing to the Commissioner General of Immigration * * * that he * * * is a person of good moral character." 8 USCA § 106a.

■ If everything the petitioner now claims be true, and the original fault was an immigration officer's and not his own, the hardship he complains of operates only to impair a privilege, but not to violate a right, for no alien has a vested right to naturalization, or to any method of procedure leading

to naturalization. "An alien friend is offered, under certain conditions, the privilege of citizenship. He may accept the offer and become a citizen upon compliance with the prescribed conditions, but not otherwise. His claim is of favor, not of right." Johannessen v. United States, 225 U. S. 240, 32 S. Ct. 613, 616, 56 L. Ed. 1066. "An alien who seeks political rights as a member of this nation can rightfully obtain them only upon terms and conditions specified by Congress. Courts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare." United States v. Ginsberg, 243 U. S. 474, 37 S. Ct. 422, 425, 61 L. Ed. 853.

■ But the petitioner further contends that a certain habeas corpus proceeding in the District Court of the United States for the Southern District of New York establishes his legal entry into the United States, and, consequently, his right to a certificate of such entry. United States ex rel. Linklater v. Commissioner of Immigration, 36 F. (2d) 239. In that case Linklater was discharged from custody under a warrant for deportation, which had been issued because it was charged that he had unlawfully entered at Seattle from Alaska in July 1926, without a proper passport, and because he had admitted committing certain felonies prior to said entry, apparently being the perjuries heretofore mentioned. The court found that Linklater had lawfully entered at Seattle in 1907; that his re-entry in 1926 after a trip to Alaska was lawful without a passport; and that, since the perjuries were committed in 1910 and 1915, they were not committed prior to his entry to the United States as alleged. Whereupon Linklater was discharged from imprisonment under the warrant of deportation, but that judgment discharged only that process, and can have no effect here, where the law, the issue, the measure of proof, and the duty of the magistrate are all different. Ex Parte Milburn, 9 Pet. (34 U. S.) 704, 9 L. Ed. 280; Holmes v. Jennison, 14 Pet. 540, 623, 10 L. Ed. 579, 618 Appx.; Collins v. Loisel, 262 U. S. 426, 43 S. Ct. 618, 67 L. Ed. 1062; Morse v. United States, 267 U. S. 80, 45 S. Ct. 209, 69 L. Ed. 522. In that proceeding the perjuries were neither questioned nor denied, but they are not thereby closed to the consideration of the Commissioner General when Linklater asks him to certify that he is satisfied of his good moral character. The petitioner justifies his perjuries and false statements by saying they were made in support of applications for naturalization or appointments to office, and therefore, like the Scotch lassie's small baby, the dereliction is de minimis.

While this view seems to have been shared to some extent by the District Judge in New York, it got no countenance from Mr. Commissioner General of Immigration, or from Madame, the Secretary of Labor. But it is the Commissioner General's view of the moralities that must be satisfied under the statute, and this must be done by Mr. Linklater, and not by the courts.

■ We regard the act of 1929 as a remedial statute intended to minimize the frauds and mitigate the hardships resulting from the absence of contemporary records of arriving immigrants. The language of the act is "any alien," and the hardship it seeks to remedy is as great in the case of a lawfully entered alien whose registry is inadvertently omitted or unfortunately lost as in the case of an unlawful alien who smuggles himself across the frontier.

We find no support for the petitioner's contention in the language, purpose, or history of the act, and, as Mr. Justice Holmes puts it, "there is no canon against using common sense in construing laws as saying what they obviously mean." Roschen v. Ward, 279 U. S. 339, 49 S. Ct. 336, 73 L. Ed. 722.

■ If this statute applies to this case, as we hold that it does, the Commissioner General is not only authorized, but required, to investigate the applicant and his alleged entry, in which investigation the burden of proof is upon the alien to show that he is lawfully within the United States and not subject to exclusion. See Act of May 26, 1924 (43 Stat. 153, 165), § 23 (8 USCA § 221).

■ And when, after consideration of evidence, the Commissioner General decides that no satisfactory showing has been made of good moral character, he is authorized to refuse the certificate. His duty being discretionary, and exercised upon evidence, his decision is not to be reviewed or controlled by mandamus. United States v. Windom (Redfield v. Windom), 137 U. S. 636, 11 S. Ct. 197, 34 L. Ed. 811; United States v. Fisher (Turner v. Fisher), 222 U. S. 204, 32 S. Ct. 37, 56 L. Ed. 165; United States ex rel. Arant v. Lane, 249 U. S. 367, 39 S. Ct. 293, 63 L. Ed. 650; Wilbur v. United States, 281 U. S. 206, 50 S. Ct. 320, 74 L. Ed. 809; Costanzo v. Tillinghast, 287 U. S. 341, 53 S. Ct. 152, 77 L. Ed. 350; Burgess v. Wilbur, 60 App. D. C.

212, 50 F.(2d) 502; Conti v. Tillinghast (D. C.) 1 F. Supp. 981.

The judgment is affirmed.