SIT JAY SING, Plaintiff,

v.

**H. D. NICE, as District Director of the Immigration and Naturalization Service, San Francisco District, and Paul Posz, as Regional Commissioner of the Immigration and Naturalization Service, Southwest Region, Defendants.**

Civ. No. 38745.

United States District Court
N. D. California, S. D.
March 11, 1960.

Robert S. Bixby, Fallon, Hargreaves & Bixby, San Francisco, Cal., for plaintiff.

Lynn J. Gillard, U. S. Atty., Charles E. Collett, Asst. U. S. Atty., San Francisco, Cal., for defendants.

YOUNGDAHL, District Judge.

■ This action for a declaratory judgment came on to be heard on cross-motions for summary judgment. Since the material facts are not in dispute and only a question of law is involved the Court is free to grant summary judgment.

■ Plaintiff, "a native and citizen of the Republic of China",[1] seeks a decision that his application to the Immigration and Naturalization Service (hereinafter referred to as the Service) for adjustment of his status to that of a permanent resident alien, under § 249 of the Immigration and Nationality Act of June 27, 1952, 8 U.S.C.A. § 1259, as amended,[2] may not be denied on the ground that he has failed to reside continuously in the United States since a date prior to June 28, 1940. Paragraph (b) of this provision sets forth the second of four prerequisites to the exercise of the Attorney-General's discretion. The plaintiff asks the Court to hold that he has satisfied this prerequisite.

Plaintiff first entered the United States on June 17, 1939,[3] at which time he was thirty-five years of age. This entry was as a non-immigrant crewman. He overstayed his shore leave and on June 26, 1942, a warrant for arrest in deportation proceedings was served on him. A hearing was accorded and on February 12, 1943 he was ordered deported. Because of the war, the order was stayed and the plaintiff was permitted to remain in the United States on bond.[4]

1. Complaint, paragraph II, to which the defendants' answer states: "no information or belief."

2. "Record of admission for permanent residence in the case of certain aliens who entered the United States prior to June 28, 1940.

"A record of lawful admission for permanent residence may, in the discretion of the Attorney General and under such regulations as he may prescribe, be made in the case of any alien, as of the date of the approval of his application or, if entry occurred prior to July 1, 1924, as of the date of such entry, if no such record is otherwise available and such alien shall satisfy the Attorney General that he is not inadmissible under section 1182 (a) of this title insofar as it relates to criminals, procurers and other immoral persons, subversives, violators of the narcotic laws or smugglers of aliens, and he establishes that he—

"(a) entered the United States prior to June 28, 1940;

"(b) has had his residence in the United States continuously since such entry;

"(c) is a person of good moral character; and

"(d) is not ineligible to citizenship." (72 Stat. 546)

3. Both the plaintiff and the defendants agree that this was the plaintiff's initial entry into the United States.

Plaintiff need establish continuous residence in the United States only from June 27, 1940. Note 2, supra. Hence, a question and answer at p. 2 of a sworn statement made by plaintiff on September 11, 1952 to the Service becomes irrelevant:

"Q. How, when and where did you enter the United States the first time? A. In 1924 in San Francisco as a seaman."

4. In addition, the Order granted a waiver of inadmissibility under the 9th proviso of § 3 of the Act of February 5, 1917, 8 U.S.C.A. § 1182(d) (3) for entry into the United States from time to time as a bona fide crewman. And see § 3(5) of the Act of May 26, 1924, 8 U.S.C.A. § 1101(a) (15) (D).

On September 22, 1945, the plaintiff sailed as a seaman from San Francisco aboard the S.S. "Fra Berlanga", a vessel of United States registry; on November 13, 1945; after a foreign voyage, the "Fra Berlanga", with plaintiff aboard, entered the United States at Seattle, Washington. When the plaintiff sailed on September 22, 1945, the Service noted "executed" on the warrant of deportation which had issued on February 12, 1943 and added "Note: This alien departed at no expense to Government as member of crew on above-named vessel [Fra Berlanga]."

5. The Service does not question that the plaintiff was a "resident" in the United States from June 17, 1939 to September 22, 1945, within the meaning of § 249.

Following 1945, the plaintiff continued to sail aboard vessels and was admitted to the United States at various times as a crewman under the provisions of § 3(5) of the Act of May 26, 1924. On June 4, 1951, plaintiff was admitted to San Francisco under § 3(5) for a period of twenty-nine days. On July 17, 1951, he applied for suspension of deportation under the provisions of § 19(C) of the Act of February 5, 1917. A warrant of arrest in deportation proceedings was issued on September 17, 1951, but the plaintiff voluntarily departed before service.

On September 12, 1952, he applied for permission to reapply after arrest and deportation, but this was denied on January 12, 1953 and no appeal was taken.

On January 3, 1954, the plaintiff entered the United States under § 252(a) of the Act of June 27, 1952, 8 U.S.C.A. § 1282(a), and on February 9, 1954, the 29-day shore leave having expired, a warrant of arrest in deportation was issued charging that at the time of entry the plaintiff was inadmissible because he had been arrested and deported and had not been granted permission to re-apply. A hearing was held on February 10, 1954 and the plaintiff was allowed to depart at his own expense. No appeal was taken. Plaintiff departed on March 20, 1954 as a crewman.

On June 30, 1954, plaintiff applied for permission to reapply for admission after deportation and permission was granted on June 30, 1954. However, plaintiff did not pursue the matter but, rather, shipped out.

On December 13, 1957, plaintiff was admitted to the United States as a crewman for 29 days. Having overstayed this

The narrow issue presented by this case is whether plaintiff's voyage, coming at a time when a warrant of deportation was outstanding against him, interrupted the continuous residence he had established in the United States since June 17, 1939.[5] Plaintiff concedes that "by voluntarily departing from the United States at a time when a warrant for his deportation was outstanding [he] effected his own deportation." The argument is made, however, that an interruption in residency does not automatically and always result from a deportation.

period, an order to show cause in deportation proceedings was issued on February 17, 1958. A hearing was held on February 26, 1958 and, once again, plaintiff was given the privilege of departing voluntarily. He departed on March 22, 1958.

On December 2, 1958, the plaintiff filed the instant application. He alleged that he resided continuously in the United States since June 17, 1939 and he requested § 249 relief. The application was denied by the District Director on January 19, 1959 on the ground that plaintiff's departure on September 22, 1945 constituted a break in residence. Plaintiff appealed to the Regional Commissioner who, on April 13, 1959, affirmed the District Director's order. A further appeal was taken and on October 20, 1959, the Assistant Commissioner affirmed, holding that plaintiff's voluntary departure at a time when a warrant of deportation was outstanding constituted a deportation and "[t]herefore, the continuity of his residence was broken." An additional ground was given: from November, 1945 to November, 1958, the plaintiff entered the United States as a non-immigrant crewman and on several occasions stated to the Service that he intended to reship as a crewman; the application form did not show a place of residence in the United States during this period but set forth only a mail drop. Having exhausted his administrative remedies, the plaintiff, on December 9, 1959, filed this suit for declaratory judgment.

Because of the disposition of the question posed in the text, the Court need not consider whether residency, within the meaning of § 249, is made out by shipping aboard a vessel of United States registry, when the vessel ships foreign. In its discussion of whether deportation interrupts residency, the Court has assumed that residency can be made out while aboard such a vessel.

While "deportation does interrupt residence in the overwhelming majority of cases", contends plaintiff, it does not do so in this case because plaintiff departed voluntarily aboard a vessel of United States registry.[6]

The plaintiff places his principal reliance upon Matter of M–, 4 I & N Adm. Dec. 82 (Oct. 9, 1950) in which the Board of Immigration Appeals held that a departure from the United States one week prior to the expiration of seven years from the date of the alien's entry did not preclude favorable action under the 7th proviso to § 3 of the Immigration Act of February 5, 1917, even though at the time of the alien's departure, a warrant of deportation was outstanding against him.

The statutory provision involved in Matter of M– reads:

" * * * aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Attorney General, and under such conditions as he may prescribe."

Even assuming that "domicile" in the 7th proviso means the same thing as "residence" in § 249,[7] the Court does not believe Matter of M– is applicable here.

First, a later administrative decision, Matter of P–, Int.Dec. No. 976 (October 16, 1958) squarely holds that "a departure from the United States as a result of exclusion or expulsion proceedings breaks the continuity of residence for the purpose of section 249, regardless of the period of time the alien is outside the United States after such departure".[8]

Second, it would not be appropriate to accept the plaintiff's contention in light of the history of § 249 and its evident purpose. § 249 was first enacted into law on March 2, 1929. It provides for the making of a record of admission for permanent residence of an alien; its purpose was to "provide relief for aliens who entered the United States prior to July 1, 1924 [now June 28, 1940], where there is inability to locate a record of their permanent admission in conformity with the immigration law at the time of their entry".[9] The Act of June 29, 1906 required that a reg-

6. Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, p. 3.

Express provision is made for the voluntary departure of aliens at their own expense. § 19(c) of the Act of February 5, 1917, 39 Stat. 889–890, as amended, Act of June 28, 1940, 54 Stat. 671–673, Act of December 8, 1942, 56 Stat. 1044; Act of July 1, 1948, 62 Stat. 1206. The statute applicable today is § 101(g) of the Act of June 27, 1952, 66 Stat. 172, 8 U.S.C.A. § 1101(g).

7. "Residence" is defined as: "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent * * *" § 101(a) (33) of the Act of June 27, 1952, 8 U.S.C.A. § 1101(a) (33).

"Domicile" is not defined by the statute; in Matter of M–, the Board said:
" 'domicile' must bear a relationship to actual residence and the broader legal fiction of domicile has no application. * * * One may in a technical sense retain a domicile in a certain place without maintaining a residence there, and

though he may be absent therefrom for many years. The rulings of the Attorney General require [for applicability of 7th proviso relief] more than a mere technical domicile, they require a residence." (at p. 92)

8. In Kwong Hai Chew v. Colding, 1953, 344 U.S. 590, at page 596, note 4, 73 S. Ct. 472, 477, 97 L.Ed. 576, the terms were used as follows:
"In this opinion 'exclusion' means preventing someone from entering the United States who is actually outside of the United States or is treated as being so. 'Expulsion' means forcing someone out of the United States who is actually within the United States or is treated as being so. 'Deportation' means the moving of someone away from the United States, after his exclusion or expulsion."

9. Report of Senate Committee on Immigration to accompany H.R. 349, 70th Cong., 2nd Sess., p. 4. The provision is not mentioned in the House Report, see H.R. No. 13, 70th Cong., 1st Sess., because it was first inserted as an amendment in the Senate and agreed to in conference.

istry be made of certain facts concerning each alien arriving in the United States and that "a certificate of such registry, with the particulars thereof" be granted to each alien.[10] § 249 was passed in order to permit the naturalization, at the discretion of the Government, of aliens who did not possess this certificate of registry—a certificate which was required for naturalization. The alien might not have the certificate because he entered unlawfully, or he might not have it because, even though his entry was lawful, his records were lost. For illustrative cases see United States v. Ness, 1917, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321; Linklater v. Perkins, 1934, 64 App.D.C. 69, 74 F.2d 473. In short, § 249 is an ameliorative provision;[11] it appears to have been designed to aid a person who has formed a substantial tie to the United States and who should not, if we are to remain humane, be automatically denied naturalization because of his inability to furnish the certificate. § 249 would not appear to be particularly pertinent to a seaman whom the Government had deported, whose wife and children live in a foreign country (Japan), and whose claim to remain in the United States results from a record of continuous shore leave violations.

A third reason why Matter of M— is inapplicable can be seen from an examination of the Board's disposition towards the factual backdrop: M— was married to a native-born citizen of the United States; he was supporting his wife and her child by a prior marriage; they were about to adopt another child; and, most importantly, his departure was only one week short of the seven-year period. The Board expressly stated: "The equities are all with the respondent" (p. 92) and the law in Matter of M— must be read in light of this statement.

If the plaintiff had been deported in 1945 at Government expense, he could not satisfy § 249. Simply because the Government permitted him to leave at his own expense does not mean a different result should obtain. Clearly, this latter procedure was preferred by the plaintiff. In September, 1945, the war had ended and he was amenable to deportation to China. Instead of this, he desired to ship out as a seaman. The Government does not appear to have had any reason to insist that it pay his way back to China and thus did not object to his leaving aboard the "Fra Berlanga".[12] But the Government's consent to the method of deportation does not lessen the force of the deportation; it does not make plaintiff's deportation something less than a Government-paid-for deportation.

The plaintiff's motion for a summary judgment is denied.

10. § 1 of the Act of June 29, 1906, 34 Stat. 596.

11. "We regard the act of 1929 as a remedial statute intended to minimize the frauds and mitigate the hardships resulting from the absence of contemporary records of arriving immigrants. The language of the act is 'any alien,' and the hardship it seeks to remedy is as great in the case of a lawfully entered alien whose registry is inadvertently omitted or unfortunately lost as in the case of an unlawful alien who smuggles himself across the frontier." Linklater v. Perkins, supra, at page 72 of 69 App.D.C., at page 476 of 74 F.2d.

12. On September 12, 1945, Z. B. Jackson, Chief, Adjudications Division of the Immigration Service in San Francisco, sent the following communication to Stan Olson, Chief, Entry and Departure Section for San Francisco:

"The above named alien has advised this office that he has signed on the SS 'Ira [sic] Berlanga' of the United Fruit Line as a 2nd cook. The vessel is now docked at Pier 24 and is expected to depart on September 21, 1945. He signed on the above-named vessel under the name Billy Sing.

"It is requested that your office verify the departure of this alien in order that warrant of deportation may be executed and the bond exonerated."

Thus it is clear that the Service knew of the plaintiff's proposed departure and assented.

The defendants' motion for a summary judgment is granted.[13]

An order accompanies this memorandum.

13. The Court need not consider the problem of where the plaintiff may be sent. In Cheng Fu Sheng v. Rogers, D.C.D.C. 1959, 177 F.Supp. 281, Judge Holtzoff held that aliens could not be deported to Formosa. His reasoning was based on the enumeration of eight possibilities as places of deportation in § 243 of the Act of June 27, 1952, 8 U.S.C.A. § 1253, each one of which is a "country". Since Formosa is not a "country", deportation to Formosa was held impermissible. However, in Cheng there was a stipulation that the Government intended to execute the warrants by deporting the plaintiffs to Formosa. In the instant case, there is no such stipulation.