LUM WAN, Plaintiff-Appellant,

v.

P. A. ESPERDY, District Director of the Immigration and Naturalization Service, New York District, Defendant-Appellee.

No. 316, Docket 27829.

United States Court of Appeals Second Circuit.

Argued April 11, 1963.

Decided July 5, 1963.

Benjamin Gim, New York City, for appellant.

Roy Babitt, Special Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, on the brief), for appellee.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Plaintiff, Lum Wan, born in China in 1894, who became a naturalized citizen of Canada in 1958, appeals from a decision of the district court, denying his motion for summary judgment and granting a similar motion by defendant.

Plaintiff left China in 1918 and entered Canada as a student. He lived in Canada (Toronto) for five years. In 1922 he was smuggled into this country (Detroit) via a freight train. He returned to Canada for an alleged visit in 1923; after a stay of two or three months in Canada, he was again smuggled into this country. From 1923 to 1932 plaintiff lived in Chicago. He then returned to Canada and, shortly thereafter, went to China. After remaining in China for four years, he returned to Canada in 1936. Again, by the smuggling process, for which as previously a monetary consideration was exacted, plaintiff re-entered the United States (Detroit). From 1936 to 1945 he

operated a laundry in Chicago. From 1946 to January 1958 he carried on the same trade in New York City. In January 1958 he left his laundry in care of a friend and went to Canada for four months. Using his 1918 papers of permanent residence in Canada, he obtained a Certificate of Canadian Citizenship. In his application for Canadian citizenship, he stated that he had resided in Toronto from August, 1918, to date (September 4, 1957). Armed with this proof of Canadian citizenship, plaintiff for the first time quasi-legitimately entered the United States in May, 1958, where he continued to operate his laundry.

In December, 1959, plaintiff submitted an application for permanent residence pursuant to the provisions of Section 249 of the Immigration and Nationality Act of 1952 (66 Stat. 163), as amended (8 U.S.C.A. § 1259). This section provides in part that a record of lawful admission for permanent residence may be made "in the discretion of the Attorney-General" if the alien establishes that (1) he entered the United States prior to June 28, 1940, (2) that he has had his residence in the United States continuously since such entry, (3) that he is of good moral character, and (4) not ineligible to citizenship. A hearing was held on plaintiff's application which was denied for two reasons: (1) plaintiff had failed to establish continuous residence in the United States "in that you became naturalized in Canada in 1958", and (2) because of the concession of three entries, all by smuggling, favorable discretionary action was not warranted. On appeal to the Acting Regional Commissioner, the denial was sustained. The memorandum from the Regional Commissioner's office to the District Director entitled, "Appeal from District Director's Decision", stated that the decision and order "is (affirmed) on the sole basis that the alien's conduct in being smuggled into the United States on three occasions and in procuring fraudulent naturalization in Canada do not warrant the exercise of discretion in his favor." This memorandum was not sent to plaintiff.

He was merely notified that his appeal "from the order of this office [the District Director] had been considered and denied by the Acting Regional Commissioner." Plaintiff then brought this action for a declaratory judgment to have the denial declared null and void and for a declaration that his application for permanent residence be approved.

The district court found "no basis to interfere with the discretion exercised by the Attorney General in this case" and also held that "plaintiff has failed to satisfy the requirement of continuous residence as found in Section 249."

On appeal, plaintiff claims that he has established by incontrovertible evidence continuous residence in this country since prior to 1940. Certainly all the facts support this conclusion—at least until 1957–58. And even a four-month sightseeing or pleasure trip to Canada would not have broken the continuity. But plaintiff did not make such a trip. He stated his reasons with clarity: "Because of China's control by the Communists, I do not want to go back to China so I want to become a citizen over there in Canada." He didn't select the United States after he had enjoyed its hospitality for the better part of thirty-five years because "It takes too much time. * * * It's easier in Canada." And so it was. Merely exhibiting his permanent Canadian residence certificate and signing a paper (which he could not read or understand—so he claims), he became a Canadian citizen. This maneuver was "just to be a citizen of a country." In view of the situation in his homeland probably any country on the North American continent would have appeared highly desirable to him.

Satisfaction, if any, with his newly found country by adoption was short-lived. Soon he departed saying, "I don't like Canada." "I like this country [the United States] and my business is here." Indeed he has shown his liking by enduring the risks and rigors of three smugglings to come here. This propensity for illegal entry, argues plaintiff, should not preclude him from the relief he seeks

because section 249 purges any pre-1940 sins. In support of this theory plaintiff points to certain decisions in other cases where discretion was exercised in favor of the alien. Assuming this to be so, Matter of S, 8 I & N Dec. 288; Matter of L-F-Y, 8 I & N Dec. 601; Linklater v. Perkins, 64 App.D.C. 69, 74 F.2d 473 (D.C.Cir.1934); there is no doctrine that the Attorney General may not consider the facts of each case in which he has to act.

There can be no question that the facts did not warrant the favorable exercise of discretion by the Attorney-General. What a travesty on justice it would be for a court to hold that the Attorney-General must make a "record of lawful admission for permanent residence" for an alien whose admissions were so patently unlawful. Plaintiff, however, would dissect the reasons assigned for each of the decisions against him and, by using the mathematical principle that the whole must equal the sum of its parts, destroy the whole to his satisfaction by questioning the validity of some of the parts. He proceeds in this manner. He argues that the decision of the District Director was based upon lack of continuous residence in this country and the three smuggling episodes. The first ground he disposes of by his proof of his laundry business, the lease of his place of business, his bank accounts, his income tax returns and his physical presence— all in New York. The departure for and stay in Canada to him constituted only a visit to become a citizen. As to the three smugglings, they were no worse than the situations in other fraudulent entry cases to which he points. Next came the decision on appeal. Here the grounds assigned were the three smugglings and the procurement of fraudulent naturalization in Canada. This charge, plaintiff claims, not having been a ground for the District Director's decision, cannot properly be a basis for the Commissioner's affirmance on appeal. He contends that he was thus denied an "adequate opportunity to meet and overcome the unproved and undocumented

charge that he had obtained Canadian citizenship fraudulently." Yet, as the record shows, he testified that any false statements in his Canadian papers were because they were prepared by a friend, that he (plaintiff) was unable to read English and that he did not intend to falsify his application.

The decision of the district court refers (1) to the two grounds mentioned by the District Director (lack of continuity of residence and smuggling), (2) to the smuggling and fraudulent naturalization grounds of the Commissioner on appeal, (3) to plaintiff's proof denying intended fraud, (4) to the principle of law that "the courts will not substitute their discretion for that of the Attorney General" and concludes that there is "no basis to interfere with the discretion exercised by the Attorney General in this case." Because the order of affirmance made no reference to the lack of continuous residence point, the district court had some doubt as to whether that issue was before the court. Resolving the doubt in favor of relying also upon this ground, it found that plaintiff had failed to satisfy the Section 249 requirement of continuous residence.

Although with the departure of Latin as a required study in preparatory schools and colleges, the phrase "allegata et probata" has lost much of its meaning as expressing the essentials for a valid judgment, nevertheless it succinctly summarizes a fundamental principle that a defendant ought to be informed of the charges against him and that such charges should be established by proof. An equally important principle, however, is that the pleadings may be conformed to the proof. With the advent of present-day "informal" pleading, the technicalities of pleading have given way in large degree to the record as a whole. Certainly an appellate court is entitled to examine the entire record before concluding whether the result reached below is correct or erroneous. Such an approach has been given Supreme Court approval in Securities & Exchange Commission v. Chenery Corp., 318 U.S. 80,

63 S.Ct. 454, 87 L.Ed. 626 (1943) wherein that Court said that it was not disturbing "the settled rule that, in reviewing the decision of the lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.' Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224." (Chenery Corp., supra, at 88, 63 S.Ct. at 459). This is not a case in which an appellate court is making a judicial judgment in lieu of an administrative judgment "which the agency alone is authorized to make and which it has not made" (Id. at 88, 63 S.Ct. at 459). Here the record discloses all the facts essential for the exercise of administrative judgment. Plaintiff had full opportunity to state and explain his conduct from his original Canadian entry in 1918 to date. Considering such conduct which included the three smugglings, the Chicago and New York laundry business, the residences in those two cities, the four months' trip to Canada, plaintiff's more than casual attitude towards the acquisition of Canadian citizenship, the Attorney General chose not to exercise his discretion in plaintiff's favor. From such exercise the scope of appellate review is narrow.

The only bases that would warrant reversal here would be (1) if "the denial has been actuated by considerations that Congress could not have intended to make relevant," U. S. ex rel. Kaloudis v. Shaughnessy, 180 F.2d 489, 491 (2 Cir. 1956), or (2) if its decision was so out of line with an established pattern as to indicate arbitrariness or caprice.

■ The district court's decision that it found no basis to interfere with the Attorney General's exercise of discretion is amply supported by the record.

The judgment is affirmed.

HAYS, Circuit Judge (dissenting).

I dissent.

The administrative handling of this case was inadequate to support the Attorney General's determination. The Regional Commissioner based his decision on (1) fraudulent naturalization in Can-

ada and (2) the illegal entries. The hearing officer made no finding of fraudulent naturalization and, on its face, the record would not require such a finding. While the Regional Commissioner could have based his decision on the illegal entries alone, it is, of course, impossible to tell whether or not he would have done so. The case should therefore be remanded for reconsideration.