## MATTER OF OUTIN

### In Deportation Proceedings

A-11423939

*Decided by Board January 5, 1972*

(1) For the purposes of section 249, Immigration and Nationality Act, as amended, an alien can establish continuous residence in the United States from the date of his original entry as a nonimmigrant crewman, notwithstanding he thereafter on numerous occasions sailed in and out of United States ports on ships of foreign registry.

(2) Respondent, following his original entry as a crewman in 1947, sailed in and out of United States ports on ships of foreign registry (approximately 53 round-trip voyages), last entering as a crewman in 1952. During the period between his first and last entries, he was at sea some 529 days and ashore in the United States approximately 1,327 days, he maintained his residence in hotels at the various United States ports of arrival, and his longest voyage was approximately 2 months. Since his entry in 1947, he has not acquired a residence in any other country. For the purposes of section 249 of the Act, as amended, he has had continuous residence in the United States since his original entry as a crewman.

CHARGE:

Order: Act of 1952—Section 241(a)(9) (8 U.S.C. 1251 (a)(9))—Nonimmigrant—failed to comply with conditions of nonimmigrant status.

ON BEHALF OF RESPONDENT:
James Canfield, Esquire
1100 Rockford Trust Building
Rockford, Illinois 61101

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trail Attorney

The Immigration and Naturalization Service appeals from the decision of the special inquiry officer, dated August 13, 1970, granting the respondent's application for the creation of a record of lawful admission under section 249 of the Immigration and Nationality Act, as amended, 8 U.S.C. 1259. Exceptions have been taken to the finding that the respondent has had his residence in the United States continuously since prior to June 30, 1948, as required by section 249.

The respondent, a native of China, formerly a citizen of Russia, male, married, 44 years of age, claims he is stateless. He originally

entered the United States as a crewman at the port of San Pedro, California on July 24, 1947. He last entered the United States at the same port on August 25, 1952 and was granted shore leave as a crewman for a period not to exceed 29 days. The respondent conceded that he is deportable as charged during the hearing accorded him on November 22, 1955. There was no appeal from the order of deprtation entered on December 19, 1955 and it became final.

The respondent on March 8, 1968 moved for a reopening of the proceedings to permit application for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act or in the alternative for the creation of a record of lawful admission for permanent residence pursuant to section 249 of the Act. The motion was granted on July 15, 1968. A reopened hearing was accorded the respondent at San Francisco, California on August 20, 1968.

We are here concerned with the respondent's application for the creation of a record of lawful admission filed pursuant to section 249 of the Immigration and Nationality Act, as amended. Section 249 provides in substance that the Attorney General may create a record of admission for permanent residence in the case of an alien who affirmatively establishes (a) that he entered the United States prior to June 30, 1948, (b) that he had his residence[1] in the United States continuously since such entry, (c) that he is a person of good moral character, and (d) that he is not ineligible for citizenship. The Service appeal is limited to the issue of whether the respondent has had his residence in the United States continuously since prior to June 30, 1948.

The facts with regard to "residence" have been fully set forth in the opinion of the special inquiry officer. The evidence establishes that following the respondent's original entry on July 24, 1947, he made approximately 53 round-trip voyages on foreign flag vessels, always signing on at an American port for a round trip and never signing off in a foreign port (p. 29). A log attached to Form I-500 (Application to Adjust by a Displaced Person Residing in the United States) shows that between July 24, 1947, his first entry, and August 25, 1952, his last entry, the respondent was at sea for a total of some 529 days and ashore in the United States for approximately 1,327 days. During this period, the respondent maintained his residence in hotels at the various ports of his

---

[1] Section 101(a)(33) of the Immigration and Nationality Act defines the term "residence" as follows:

(33) The term "residence" means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent ....

arrival in the United States. His longest voyage during the five-year period was for approximately two months. The respondent testified that since his arrival in July of 1947, he has "made [his] home in the United States" and "never had a home anywhere else" (p.7). There is no evidence that the respondent has acquired a "residence" in any other country but the United States since he entered the United States in 1947.

The Service contends that the respondent did not have a "residence" in the United States prior to June 30, 1948 because there is a "clear legislative intent" under the immigration laws which distinguishes alien crewmen from other aliens. The Service argues that "the manifest intent" of former sections 15 and 19 of the Immigration Act of 1924, 8 U.S.C. 215 and 166, 1940 ed., as well as the Immigration and Nationality Act of 1952, "is to prevent [the] admission of alien [crewmen], on the same grounds that a non [crewman] alien could be excluded, save only that a [crewman] may come temporarily, and temporarily only, while he continues to work at his occupation as a [crewman]" (p. 4, Service brief). It is the Service position that such an intent "prohibits" a finding that this respondent had a residence in the United States prior to June 30, 1948.

We have carefully read the provisions of the 1924 Act referred to in the Service brief and have compared them with corresponding provisions of the 1952 Act.[2] Whereas both the 1924 Act and the 1952 Act refer to the "temporary landing or entry" of a crewman, we fail to see the relevance of such language to the issue of whether the respondent acquired a "residence" in the United States within the meaning of section 101(a)(33) of the 1952 Act, *supra*, footnote 1. We note that section 214(a) of the 1952 Act, 8 U.S.C. 1184(a), the counterpart of section 15 of the 1924 Act insofar as it relates to crewmen, refers to the admission "of any alien as a nonimmigrant" rather than referring specifically to an "excepted class of immigrants" including a bona fide crewman who is seeking to "temporarily enter the United States" in the pursuit of his calling. The above-quoted language in section 214(a) does not support the Service claim of a legislative intent to distinguish crewmen from other nonimmigrants when they are applicants for relief under section 249 of the 1952 Act.

The respondent, ever since he originally entered on July 24, 1947, has sought by all available means to remain legally in the United States (Ex. 10, p. 5). During 1948 he applied for an immigrant visa for permanent residence (Ex. 10, p. 5). He applied

---

[2] Sections 101(a)(15)(D), 214, 252 and 253 of the Immigration and Nationality Act of 1952.

for relief under the provisions of section 4 of the Displaced Persons Act of 1948 on July 2, 1952 (Ex. 11). There can be no doubt that since July 24, 1947, the respondent's "actual dwelling place in fact" was not on ship while sailing to and from various ports of the United States. His place of "general abode" was on shore. He testified on August 29, 1952 that he was seeking employment with the Southern Pacific Railroad as an electrician and that he resided at 524 Guerrero Street in San Francisco, California (pp. 9 and 10 of Ex. 10).

The facts of this case are similar to those considered by us in *Matter of Ting*, 11 I. & N. Dec. 849 (BIA, 1966). Ting originally entered as a crewman in 1945. During the period 1945 to 1953, when he last entered as a crewman, Ting sailed in and out of United States ports on ships of American registry and made some 33 entries as a crewman. We concluded that Ting's service aboard a vessel of United States registry since his original entry in 1945 may be deemed as "continuous residence" in the United States for the purpose of qualifying for the creation of a record of lawful admission for permanent residence pursuant to the provisions of section 249 of the Act. We noted in our opinion that Ting's several departures as an alien crewman since his original entry in 1945 had not been under an order and warrant of deportation. This factor distinguished Ting's case from those in which the courts have held that a departure from the United States under a warrant of deportation breaks the continuity of residence for the purpose of section 249.[3] We have also held in *Matter of Young*, 11 I. & N. Dec. 38 (BIA, 1965), that an applicant's voluntary departure from the United States following the institution of, and pursuant to, deportation proceedings did not break the continuity of his residence within the purview of section 249. The alien in the *Young* case was occupationally a crewman.

An alien crewman lawfully admitted for permanent residence who serves upon a ship of foreign registry, owned by a corporation organized under the laws of the country of registry, the controlling shares of which are owned by United States corporations and which plies between ports in the United States and foreign ports, may establish the "continuous residence" in the United States required for naturalization pursuant to section 330 of the Immigration and Nationality Act, 8 U.S.C. 1441(a)(2), *United States* v. *Camean*, 174 F.2d 151 (C.A. 2, 1949). Another court said, "The term 'residence' was defined [by Congress] under a particular section

---

[3] *Mrvica* v. *Esperdy*, 376 U.S. 560 (1964); *Chong* v. *Esperdy*, 191 F. Supp. 935 (S.D.N.Y., 1961); *Sit Jay Sing* v. *Nice*, 182 F. Supp. 292 (D. Cal., 1960); aff'd per curiam, 287 F.2d 561 (C.A. 9, 1961).

[101(a)(33)] that was to have uniform application," *Grauert* v. *Dulles*, 133 F. Supp. 836, 839 (D.D.C., 1955), aff'd 239 F.2d 60 (D.C. Cir., 1956, cert. denied 353 U.S. 917.

We conclude in light of the foregoing court decisions that if an alien crewman admitted for permanent residence can establish "continuous residence" within the meaning of section 330 of the Immigration and Nationality Act while sailing in and out of United States ports on ships of foreign registry controlled by United States corporations, then the respondent herein, who sailed in and out of United States ports on ships of foreign registry, can also establish "continuous residence" under a statute which has for its sole purpose the creation of a record of lawful admission for permanent residence. Uniform application of the term "residence" as defined by section 101(a)(33), *supra*, footnote 1, would justify no other conclusion.

We have carefully reviewed the Supreme Court's decision in *Mrvica* v. *Esperdy*, *supra*, footnote 3, in light of the Service claim that, "In deciding *Mrvica*, the Court looked at the legislative intent. Here, also, legislative intent is the prime consideration" (p. 3, Service brief). The only reference in the decision, 376 U.S. 568, to "legislative intent" is as follows:

The obvious purpose of deportation is to terminate residence. It would defy common understanding and disregard *clear legislative intent* were we to hold that that purpose had not been achieved in this instance. (Emphasis supplied.)

The Supreme Court however, was referring to the "legislative intent" associated with an executed "order of deportation" insofar as such an order relates to a termination of a crewman's residence. The Court in fact recognized that where there was no executed order of deportation, the interpretation of what Congress intended when a resident crewman departed from the United States could be entirely different. The Court said at 386 U.S. 567:

We think it beyond dispute that one who has been deported does not continue to have his residence here, *whatever may be the significance of other factors in the absence of a valid deportation.* (Emphasis supplied.)

We affirm the special inquiry officer's finding that the respondent is not a member of the excludable classes enumerated in section 249 of the Act, that he is not ineligible to citizenship and that he is a person of good moral character. We conclude that the respondent has established eligibility for the discretionary relief available under section 249 of the Immigration and Nationality Act. The order of the special inquiry officer will be affirmed and the Service appeal dismissed.

**ORDER:** It is ordered that the order of the special inquiry officer dated August 13, 1970 granting the respondent's applica-

tion for adjustment of status under section 249 of the Immigration and Nationality Act be and the same is hereby affirmed.

*It is further ordered* that the Service appeal be and the same is hereby dismissed.